No. 58,390

CRAIG FINKBINER, *Appellant,* v. CLAY COUNTY KANSAS; and
MULBERRY TOWNSHIP OF CLAY COUNTY, KANSAS, *Appellees.*
(714 P.2d 1380)

Opinion filed February 21, 1986.

*Bruce C. Barry,* of Bengtson, Waters, Thompson and Barry, Chartered, of Junction City, argued the cause, and *Roger D. Thompson,* of the same firm, was on the brief for appellant.

*John D. Conderman,* of Arthur, Green, Arthur and Conderman, of Manhattan, argued the cause and was on the brief for appellee Clay County, Kansas.

*J. Franklin Hummer,* of Davis, Unrein, Hummer and McCallister, of Topeka,

argued the cause and was on the brief for appellee Mulberry Township of Clay County, Kansas.

The opinion of the court was delivered by

LOCKETT, J.: Plaintiff drove his pickup truck over the end of a township road into a dry river bottom. He sued both the county and the township for injuries suffered, claiming they had failed to post proper warning signs. The district court granted summary judgment to the defendants after determining that under the Kansas Tort Claims Act, K.S.A. 75-6101 *et seq.*, they were immune from liability because the signing of a road was a discretionary function. K.S.A. 75-6104. The plaintiff appeals.

On February 5, 1982, plaintiff, Craig Finkbiner, was traveling in his pickup truck south on Clay County road No. 827. As he approached the intersection of Clay County roads No. 827 and No. 368 from the north, he viewed a cross-intersection sign. Clay County road No. 368 is a gravel road which goes west. The road going east from the intersection is a dirt road maintained by Mulberry Township. A "T" intersection sign, indicating no eastbound road, had been placed by the County on the highway for traffic going north on 827.

Finkbiner turned east on the township road, a road he had not traveled previously, planning to connect with a southbound road a mile east. There were no signs or ditches along this stretch of the township road. Approximately three-quarters of a mile from the intersection, the township road terminated with a drop-off into the old riverbed of the Republic River. Finkbiner, who was driving approximately 45-50 miles per hour, drove over the end of the road into the river bottom, damaging his truck and suffering personal injuries.

Finkbiner brought suit against both Clay County (County) and Mulberry Township (Township) claiming they failed to properly place warning signs in accordance with statutory requirements. The County and the Township filed separate motions for summary judgment, each alleging that the placement or the failure to place a warning sign by the local governmental entity was a discretionary act. Therefore, they contended K.S.A. 75-6104(d) of the Kansas Tort Claims Act prohibited this action against both the County and the Township. The district court sustained both motions for summary judgment, and the plaintiff appeals.

Summary judgment is proper if no genuine issue of fact remains, giving the benefit of all inferences which may be drawn

from the admitted facts to the party against whom judgment is sought. A trial court, in ruling on motions for summary judgment, should search the record to determine whether issues of material fact do exist. When summary judgment is challenged on appeal, an appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment. *McAlister v. Atlantic Richfield Co.*, 233 Kan. 252, 662 P.2d 1203 (1983).

On appeal, Finkbiner raises two issues. He contends that the district court erred in finding that under K.S.A. 75-6104(d) the Township and the County were immune from suit for failure to place signs warning that the township road was a dead end. He also contends that the district court erred in finding that Clay County was not negligent in placing a cross-intersection sign for southbound traffic while placing a "T" intersection sign indicating no eastbound road for northbound traffic.

Historically, the common law placed a duty on governmental entities to keep their streets reasonably safe for use. See *Schmeck v. City of Shawnee*, 232 Kan. 11, 17, 651 P.2d 585 (1982). Before 1887, counties and townships, being quasi-corporate subdivisions of the state, were not liable in damages for any injuries sustained because of the negligence of their officers or employees in the construction or maintenance of highways. In 1887, the legislature, by enactment of L. 1887, ch. 237, saw fit to make counties and townships liable, under certain enumerated circumstances. K.S.A. 68-301 (Weeks) (repealed, L. 1979, ch. 186, § 33) imposed liability for defects on county and township roads. See, *e.g., Hampton v. State Highway Commission*, 209 Kan. 565, 498 P.2d 236 (1972). In *Grantham v. City of Topeka*, 196 Kan. 393, Syl. ¶ 2, 411 P.2d 634 (1966), this court held that the means selected by the state or a city in the control and regulation of traffic under the police power is a governmental function. We said a governmental entity is not liable for the negligent acts of its officers or employees in the performance of a governmental function; however, an exception is recognized with respect to defects in public streets on the theory they are necessary for public use at all times and under all conditions. 196 Kan. 393, Syl. ¶ 3.

Governmental liability is now covered by the Kansas Tort Claims Act (KTCA), enacted in 1979, which permits recovery of

damages from a governmental entity when damages are "caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state." K.S.A. 75-6103. Exceptions to this general liability are set forth in K.S.A. 75-6104.

Here, the district court determined that the County and Township were immune under 75-6104(d) of the KTCA from any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee. The plaintiff argues that it was not discretionary with the governmental entities to place the signs and that, based on the totality of the circumstances, the county and township had a statutory duty to place the proper warning signs to protect the public traveling on the roads.

It is undisputed that Mulberry Township is responsible for the road going east of the intersection of county roads 827 and 368. Originally, there were two homesteads along the township road, but both were abandoned in the 1930's. The road is used mainly by local farmers to get their equipment to land under cultivation. It was unknown if any accidents had ever occurred on the road. No citizens in the county had ever requested that the road be inspected for safety purposes or that signs be erected along the road. Because of limited funds available for road improvement, the township board determined on a priority basis what road improvements were scheduled each year. Due to the low volume of traffic on the township road, improvements on it would not have been scheduled.

To determine whether or not the County's and the Township's liability for failure to place a sign is within the exercise of discretion which is excepted from liability by the KTCA, we first must examine the statutory duties imposed upon the County and the Township for placing and maintaining traffic-control devices upon their roads.

The secretary of transportation is required by the legislature to adopt a manual and specifications for a statewide uniform system of traffic-control devices. K.S.A. 8-2003. To carry out the policy declared by the legislature, the secretary adopted the Manual on Uniform Traffic Control Devices for Streets and Highways

(MUTCD) published by the United States Department of Transportation. Local authorities are required by the legislature to place and maintain such traffic-control devices upon the highways under their jurisdiction as they may deem necessary to indicate and carry out the provisions of the act or local traffic ordinances or to regulate, warn or guide traffic. K.S.A. 8-2005.

When the district court determined that the County and Township were granted absolute immunity for the placement of signs upon their roads under the exception to KTCA for discretionary functions, it failed to distinguish this case from our prior statements in *Carpenter v. Johnson*, 231 Kan. 783, 649 P.2d 400 (1982). The *Carpenter* court determined that the governmental immunity exception of the KTCA for the placement of traffic control signs does not necessarily apply as a matter of law. *Carpenter* involved the failure of a county to post a warning sign for an approaching curve. This court held that state and local highway engineers are guided by the MUTCD, which contains rather detailed recommendations in the placement of warning signs. Whether or not the placement of a warning sign is discretionary or an exercise of professional judgment within established guidelines depends upon the totality of the circumstances involved and may not be determined as a matter of law. See also *Toumberlin v. Haas*, 236 Kan. 138, 142, 689 P.2d 808 (1984), in which this court reaffirmed that it was not strictly a discretionary act whether to erect a sign, but that "the totality of the circumstances" controlled in determining whether the decision with respect to any particular sign was discretionary in nature and exempt from liability.

The 1978 edition of the MUTCD was in effect at the time of the accident in this case. The manual states:

"Signs are essential where special regulations apply at specific places or at specific times only, or where hazards are not self evident." Section 2A-1, "Functions of Signs."

The MUTCD provides the standards for placing signs. It is then a matter of professional judgment rather than governmental discretion as to whether a certain sign should be placed. Where a plaintiff claims both the county's and the township's failure to warn him, as required by the MUTCD, of a hazard that was not self-evident caused his injuries, it is necessary to determine: (1) what governmental entities are responsible for the safety of

travelers upon the road; (2) whether or not a hazard exists; (3) whether or not the hazard is self-evident; and (4) if the hazard is not self-evident, whether the responsible governmental entity made the correct decision in determining the proper signs or barricades needed to warn travelers in order to provide adequate time for the driver to perceive, identify, decide, and perform any necessary maneuver.

Under the facts of this case it cannot be determined as a matter of law that the hazard was not self-evident and that the local governmental entities were immune under the KTCA for their failure to place the proper signs or to erect a barricade. The trial court erred when it determined that both the County and the Township were immune from liability under K.S.A. 75-6104(d). Whether a governmental entity had a duty must be determined under the totality of the circumstances. This is a question of fact which must be determined by a jury.

Since all parties agree that the Township alone was responsible for the township road, the County cannot be liable for failure to place signs warning of a dead end on the township road. A township, having the exclusive care and control of a street or road, has a duty to maintain that road or street for the safe passage of persons and property. Other governmental entities cannot be held liable for failure to maintain that road safely. *City of Eudora v. Miller,* 30 Kan. 494, 2 Pac. 685 (1883). Therefore, it is a question only as to the Township whether, under the totality of the circumstances, it should have placed a warning sign.

The plaintiff also contends that Clay County was negligent in placing a cross-intersection sign for southbound traffic, while a T-intersection sign was placed for northbound traffic. Finkbiner claims that the cross-intersection sign implied that the eastbound township road was a through road, indicating that he could safely travel the township road to the next connecting north-south road.

Finkbiner did not observe or rely on the "T" sign which the County had erected to warn northbound traffic on 827. The discrepancy in marking the southbound traffic with the cross-intersection sign and the northbound traffic with the T-intersection sign by the County is important only to show the confusion as to the proper sign required to guide and warn travelers approaching the intersection.

Concerning the two types of signs, the MUTCD provides:

1). The crossroad sign is intended for use on a through highway to indicate the presence of an obscured crossroad intersection.

2). The side road sign is intended for use in advance of a side road intersection to indicate the presence of an obscured side road intersection.

Since Clay County road 827, a north-south road, intersects with Clay County road 368, a westbound road, and Mulberry Township road, an eastbound road, the MUTCD indicates that the proper sign to erect would be the crossroad sign. Travelers on 827, a through road, would be warned that they were approaching an obscured crossroad intersection. The County followed the law as stated in the MUTCD. The district court properly found that the County had correctly followed the law by erecting a cross-intersection sign to warn drivers of oncoming traffic.

The district court also found that the County's action in placing the crossroad sign was not the proximate cause of the plaintiff's injuries because there was an efficient intervening cause, *i.e.*, that the Township failed (1) to place a sign warning travelers on the county road that the township road terminated in a dead end, and (2) to erect a barricade where the road dead-ended into the dry river channel, thereby creating a nonevident hazard.

An intervening act of negligence is one which actively operates in producing harm to another after the original act of negligence or omission has been committed. In determining issues of legal or direct cause, an intervening cause has been said to be material insofar as it supersedes a prior wrong as the direct cause of an injury by breaking the sequence of events between the original wrong and the injury received. One person's negligence is not the proximate or direct cause of an injury where there is a new, separate, wholly independent, and efficient intervening cause of the injury and the loss, *Citizens State Bank v. Martin*, 227 Kan. 580, 609 P.2d 670 (1980).

For negligence to exist there must be a duty and a breach thereof before the conduct becomes actionable. If no duty exists there can be no negligence. The County had a duty to keep its road in a condition reasonably safe for its intended use. By statute, it had a duty to erect warning signs in accordance with the MUTCD to provide to a driver unacquainted with the county

road adequate time to perceive, identify, decide, and perform any necessary maneuver. The MUTCD indicates that the proper sign to be placed at the intersection of County Roads 827 and 368 was a crossroad sign. The crossroad sign placed on 827 indicates that 827 is a through highway and that the driver is approaching an obscured crossroad intersection. Because the County had placed the proper sign, it had fulfilled its legal duty and the question of an intervening act of negligence by the Township is not applicable to this case.

Judgment of the district court is affirmed in part and reversed in part. The case is remanded for further proceedings consistent with this opinion.

McFARLAND, J., concurring in part and dissenting in part: I concur with the part of the majority opinion which affirms the entry of summary judgment in favor of defendant Clay County and dissent from the part of the opinion which reverses the summary judgment entered in favor of defendant Mulberry Township.

In reversing the Mulberry Township judgment, the majority states the trial court "failed to distinguish this case from our prior statements in *Carpenter v. Johnson*, 231 Kan. 783, 649 P.2d 400 (1982)." In fact, the trial court very accurately distinguished the instant case from *Carpenter*. As noted in *Carpenter*, summary judgment was entered by the district court on the basis that erection of warning signs was wholly a matter of discretion and hence always cloaked with immunity. Further, under the facts in *Carpenter*, a professional engineer made the decision as to where to place and what type of traffic signs to use, applying a state manual premised upon the Manual on Uniform Traffic Control Devices. Under the circumstances in *Carpenter*, our court stated:

"It is apparent from our reading of the Manual on Uniform Traffic Control Devices that state and local highway engineers are guided by rather detailed recommendations in placement of warning signs. The question becomes whether those employees are exercising discretion within the meaning of the [Kansas Tort Claims Act] or merely exercising professional judgment within established guidelines. Cases construing the Federal Tort Claims Act have made such a distinction." 231 Kan. at 788.

No professional engineering decision is involved in the case before us. There is no township engineer in charge of the

Mulberry Township roads and the discretionary responsibility for sign erections is in the three Trustees of Mulberry Township—three lay persons. With very limited funds available, the Trustees decide what will be spent on each road in their care. In making their discretionary decision on allocation of funds, they consider such factors as volume of traffic, needs, prior accidents, etc. Plaintiff's sole engineering expert testified the road in question was the most primitive class of road in the state—a Type C road. He testified, in his deposition, he would have placed a dead end sign and barricaded the road, but it was not mandatory for the Trustees to do so. The Trustees, exercising their discretion, could have placed the sign and barricade, but they were not legally obligated to do so. The decision, hence, was discretionary rather than mandatory in nature.

The case before us is much more akin to *Toumberlin v. Haas*, 236 Kan. 138, 689 P.2d 808 (1984) (a case which, incidentally, distinguished itself from *Carpenter*). In *Toumberlin* this court stated:

"In the present case, the trial court's ruling against the plaintiffs on the discretionary nature of the duty of Franklin County came after the conclusion of all the evidence. Plaintiffs had presented absolutely no engineering testimony that the placement of any type of sign at the intersection was warranted or required under the terms of the Manual on Uniform Traffic Control Devices. Plaintiffs presented no engineering studies or accident history regarding the intersection which would have justified any type of sign. The only engineer who did testify stated that no sign was required or justified at the intersection due to the low volume of traffic. Based on the total lack of evidence presented by the plaintiffs to support the proposition that some type of sign was mandated at this intersection, the trial court was clearly correct in ruling that there was insufficient evidence for the case to go to the jury on the issue of whether the placement of a sign was mandatory or discretionary. The only testimony heard by the court supported the proposition that signing at this particular intersection was discretionary." 236 Kan. at 142.

The Kansas Tort Claims Act (K.S.A. 75-6101 *et seq.*) provides exceptions from liability. They are found in K.S.A. 75-6104, which provides in pertinent part:

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

"(d) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion be abused;

. . . .

"(g) the malfunction, destruction or unauthorized removal of any traffic or road sign, signal or warning device unless it is not corrected by the governmental entity responsible within a reasonable time after actual or constructive notice of such malfunction, destruction or removal. Nothing herein shall give rise to liability arising from the act or omission of any governmental entity in placing or removing any of the above signs, signals or warning devices when such placement or removal is the result of a discretionary act of the governmental entity . . . ."

Clearly, the legislature intended no liability for damages from a governmental entity exercising its discretion in deciding whether or not to place traffic signs or warning devices—even if the decision made may be the wrong one.

Here the plaintiff's sole engineering expert testified the decision to sign, or not to sign, was not mandatory in nature, and was in the area of the Trustees' discretion. Like *Toumberlin,* there was no evidence to take the case to the jury on whether the failure to sign involved mandatory or discretionary functions. The jury could, at most, only determine whether or not the discretion had been abused—having the advantage of hindsight knowledge that an accident had occurred.

The net result of the majority decision relative to Mulberry Township is to destroy the immunity granted by K.S.A. 75-6104 based upon an incorrect application of *Carpenter v. Johnson,* 231 Kan. 783.

The Manual on Uniform Traffic Control Devices is written by engineers for engineers. Interpretation thereof is necessary in court proceedings. To escape a summary judgment in cases involving liability of a governmental entity for failure to install signs, it is incumbent on the plaintiff to show at least some expert evidence that a sign was mandatory under the circumstances.

I would affirm the district court across the board.

SCHROEDER, C.J., and MILLER, J., join the foregoing concurring and dissenting opinion.