(838 P.2d 896)
No. 66,791 ■

DAMON MARSHALL FORCE, By and Through His Natural Mother, Guardian of His Person and Conservator of His Estate, Carol Force, *Appellant,* v. CITY OF LAWRENCE, KANSAS, and SECRETARY OF TRANSPORTATION OF THE STATE OF KANSAS, HORACE B. EDWARDS, *Appellees.*

Opinion filed April 3, 1992.

*Richard E. Rice,* of Kansas City, Missouri, and *Micheline Z. Burger,* of Olathe, for appellant.

*Gerald L. Cooley* and *Michelle A. Redwood,* of Allen, Cooley & Allen, of Lawrence, for appellee City of Lawrence.

*Jay L. Smith,* of office of chief counsel, and *Michael B. Rees,* chief counsel, for appellee Kansas Department of Transportation.

WHITE, J.: In this personal injury action, Damon M. Force appeals the trial court's decision granting summary judgment to the defendants City of Lawrence (City) and the Secretary of Transportation for the State of Kansas (KDOT). Force was injured in an automobile accident and claimed the defendants were negligent in failing to install a protected left-turn signal at the intersection of 23rd Street and Ousdahl in Lawrence. The district court held the defendants were immune from liability under the discretionary act exception to the Kansas Tort Claims Act (KTCA), K.S.A. 75-6101 *et seq.* We affirm the decision of the trial court.

The facts are brief and undisputed. Force suffered serious injuries resulting from a collision of his motorcycle and a van being driven by Russell Kuhn, III. The accident occurred within the City. Immediately prior to the collision, Force was riding his motorcycle eastbound, approaching Kuhn who was traveling westbound in his van. As the two vehicles entered an intersection, Kuhn turned left in front of Force. Force's motorcycle struck Kuhn's van near the passenger door. As a result of the collision, Force suffered massive head injuries and was in a coma when his mother, as his guardian and conservator of his estate, filed this suit.

In his petition, Force alleges that Kuhn failed to yield to oncoming traffic and that the City and KDOT were negligent in failing to keep the street in a reasonably safe condition. Force settled his claim against Kuhn and dismissed him from the action. Force alleges that the accident probably would not have occurred

if the City and KDOT had installed a protected left-turn arrow at the intersection. Force also alleged several other specific instances of negligence by the defendants, such as failing to make or update traffic counts at the intersection and failing to review the intersection's accident history; but each of these allegations is a part of the general allegation that the City and KDOT were negligent in failing to install a left-turn arrow at the intersection.

Following discovery, the City and KDOT moved for summary judgment. Based on the summary judgment motions and Force's response, the court found the following facts to be uncontroverted:

"5. There was no protected left-turn signal for traffic turning off of 23rd Street/K-10 Highway at this intersection. Specifically, there was no left-turn signal protecting Mr. Force, the plaintiff, from Mr. Kuhn's vehicle and all other westbound traffic on 23rd Street/K-10 Highway turning south.

"6. Plaintiff's basic cause of action against the City of Lawrence and KDOT is that the accident more probably would not have occurred if a protected left-turn signal had been installed at the intersection. . . .

"7. Defendant KDOT will normally study an intersection on a connecting link if so requested by the local authorities. Defendant KDOT can study an intersection on a connecting link on its own initiative. Defendant KDOT did not do so in this case.

"8. 23rd Street/K-10 Highway is designated as a connecting link in the State Highway system.

"9. The Manual on Uniform Traffic Control Devices (MUTCD) does not set forth any conditions upon which a traffic signal with left-turn phasing is required. The MUTCD sets forth no criteria whatsoever concerning the issue of left-turn phasing or signaling.

"10. There are no federal or Kansas standards or manuals which require that left-turn phasing be installed under any given circumstances; however, other public or private entities publish guidelines for suggesting installation of left-turn signals. These are the Manual of Traffic Signal Design and the Traffic Control Devices Handbook relied upon by the plaintiff's expert, Mr. Glennon.

"11. Defendant KDOT's expert, the Assistant Bureau Chief for KDOT, opines that a left-turn signal at the intersection was not justified prior to Plaintiff's accident by any guidelines used by KDOT. Plaintiff's expert witness opines that a left-turn signal was justified, and would have made the intersection safer, and probably would have prevented the accident in question.

"12. Defendant KDOT's expert further opines that the traffic volume at the intersection is insufficient to meet the guidelines followed by KDOT to determine when left-turn signals are needed. Plaintiff's expert opines that the traffic volume criteria as set forth in the Manual of Traffic Signal Design

and the Traffic Control Devices Handbook was met to justify the left-turn signal. Plaintiff's expert stated the accident experience at the intersection also justified the placement of a left-turn signal. KDOT's expert admits the accident experience criteria as set forth in the Manual of Traffic Signal Design and the Traffic Control Devices Handbook was met for the purposes of considering the desirability of the placement of a left-turn signal at the intersection. City's expert likewise agreed with the opinion of KDOT's expert."

The court, having found that the Manual on Uniform Traffic Control Devices (MUTCD) does not contain any criteria or suggestions for determining the need or desirability for placement of a left-turn signal, concluded that the decision of whether to do so is discretionary and that both defendants are immune from liability under the KTCA. The court further found that, as the MUTCD establishes no duty for the placement of such a signal, neither of the defendants can be considered negligent for their failure to do so. The court granted the defendants' motions for summary judgment, and Force appealed.

A trial court may grant summary judgment where there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law. K.S.A. 1991 Supp. 60-256; *Patterson v. Brouhard,* 246 Kan. 700, 702, 792 P.2d 983 (1990).

"What constitutes a 'genuine issue of material fact' appears to account for most of the voluminous opinions on the question.

"It may be said an issue of fact is not genuine unless it has legal controlling force as to a controlling issue. A feigned or imaginary issue is not a genuine issue. A disputed question of fact which is immaterial to the issue does not preclude summary judgment. If the disputed fact, however resolved, could not affect the judgment, it does not present a genuine issue of a material fact." *Smith v. Engel,* 206 Kan. 298, 299-300, 477 P.2d 937 (1970).

The record is viewed in the light most favorable to the non-moving party, who is entitled to the benefit of all inferences that may be drawn from the admitted facts. *Hunt v. Dresie,* 241 Kan. 647, 652, 740 P.2d 1046 (1987).

Force contends the trial court erred in granting summary judgment as there is a factual dispute about whether a left-turn signal was required to make the intersection reasonably safe. The City claims that the decision to install a protected left-turn light is a discretionary function for which the City is immune from liability under the KTCA. The City also claims that its act of omission

was not the proximate cause of Force's injury. KDOT also argues that the discretionary function exception to the KTCA provides the defendants with immunity from liability. Additionally, KDOT claims that Force cannot prove the essential element of duty where the MUTCD, which the Secretary of Transportation adopted pursuant to K.S.A. 8-2003, does not establish any standards for the placement of protected left-turn signals.

The duty of governmental entities for placement of traffic signs and the contention that placement of such signs is a discretionary act has been considered by the Kansas Supreme Court in *Carpenter v. Johnson*, 231 Kan. 783, 649 P.2d 400 (1982). The plaintiff in *Carpenter* was injured when the automobile in which he was a passenger went off the roadway on an unmarked curve and struck an embankment. The plaintiff brought a claim against the State and Shawnee County alleging that they had wrongfully failed to erect a sign to warn drivers of the curve in the road. 231 Kan. at 783-84. The district court entered summary judgment for the governmental entities in the belief that the decision to erect a sign is always discretionary and therefore protected by the exception from liability for discretionary acts under the KTCA. "According to the district court's reasoning, conformity with the state-approved manual and specifications becomes important only after the decision to erect a sign is made." 231 Kan. at 787. The Supreme Court disagreed. 231 Kan. at 788.

The *Carpenter* court looked to the MUTCD and the Maintenance Manual on Signs and Markers for Highways in Kansas, a manual prepared by the State Highway Commission from the MUTCD, for guidance on whether the failure to place a sign is always within that exercise of discretion, which is exempted from liability. 231 Kan. at 789-90. The court stated:

"To determine whether or not the failure to place these signs is within the exercise of discretion which is excepted from liability, we first must examine the duty of the governmental entities. K.S.A. 8-2003 requires the secretary of transportation to adopt a manual and specifications for a uniform system of traffic-control devices within the state.

'The secretary of transportation shall adopt a manual and specifications for a uniform system of traffic-control devices consistent with the provisions of this act for use upon highways within this state. Such uniform system shall correlate with and so far as possible conform to the system set forth in the most recent edition of the manual on uniform traffic-

control devices for streets and highways and other standards issued or
endorsed by the federal highway administrator.'
Pursuant to this statute, the secretary adopted the Manual on Uniform Traffic
Control Devices for Streets and Highways published by the United States
Department of Transportation. The 1972 edition was in effect at the time
of this 1979 accident.

"K.S.A. 8-2004 requires the secretary to place such signs as he shall deem
necessary *in accordance with the manual and specifications.*

'(a) The secretary of transportation shall place and maintain such
traffic-control devices, conforming to the manual and specifications
adopted under K.S.A. 8-2003, upon all state highways as the secretary
shall deem necessary to indicate and to carry out the provisions of this
act or to regulate, warn or guide traffic.'

"K.S.A. 8-2005 addresses the obligation of local authorities:

'(a) Local authorities in their respective jurisdictions shall place and
maintain such traffic-control devices upon highways under their juris-
diction as they may deem necessary to indicate and to carry out the
provisions of this act or local traffic ordinances or to regulate, warn or
guide traffic. All such traffic-control devices hereafter erected shall con-
form to the state manual and specifications.' " 231 Kan. at 786-87.

Prior to the enactment of the KTCA, liability for highway de-
fects was imposed upon the State by statute and upon munici-
palities by the common law. 231 Kan. at 785. "Historically, the
common law placed a duty on government entities to keep their
streets reasonably safe for use." *Finkbiner v. Clay County,* 238
Kan. 856, 858, 714 P.2d 1380 (1986). Under the street defect
exception to governmental immunity, liability was based upon
the existence of a hazardous condition that constituted a "defect"
in the street. The absence of negligence or the exercise of dis-
cretion were not factors to be considered. "[W]e are not dealing
with the commission's exercise of discretion any more than we
are dealing with its negligence or lack of it. Its action or non-
action is judged by the result—*i.e.,* whether it produced such a
hazardous condition that it constituted a 'defect' in the highway."
*Hampton v. State Highway Commission,* 209 Kan. 565, 577, 498
P.2d 236 (1972). See also *Schmeck v. City of Shawnee,* 232 Kan.
11, 21, 651 P.2d 585 (1982) ("[A] city's common-law duty to keep
its streets reasonably safe cannot be avoided by alleging the acts
were discretionary.").

Governmental immunity and the street defect exception were
replaced by the KTCA. In *Carpenter,* the Supreme Court de-
clined to follow the prior law concerning street defects:

"Three specific circumstances convince us this prior law concerning highway defects should not be engrafted onto the Tort Claims Act. First, the legislature specifically repealed the highway defect statutes. Second, under prior law, the alleged defect was the sole focus of the inquiry regardless of any discretion which might have been exercised. *Hampton v. State Highway Commission,* 209 Kan. at 577-78. Third, under the prior law, no essential distinction existed between defects resulting from maintenance or failure to place signs. [Citations omitted.] As discussed more fully herein, the Tort Claims Act distinguishes between sign maintenance and sign placement, with the exercise of discretion a significant inquiry with regard to liability for sign placement." 231 Kan. at 785.

The street defect doctrine is no longer the law of Kansas. See 231 Kan. at 785. See also *Taylor v. Reno County,* 242 Kan. 307, 310-11, 747 P.2d 100 (1987) (Liability must now be founded upon a negligent or wrongful act or omission under the KTCA.).

The KTCA specifically creates an exemption from liability at K.S.A. 1991 Supp. 75-6104(e) for discretionary acts. In *Carpenter,* the Supreme Court stated:

"It is important, for purposes of background, to note the Kansas Tort Claims Act contains a discretionary function exception patterned after the discretionary function exception in the Federal Tort Claims Act. 28 U.S.C. § 2680(a). The Kansas exception, at K.S.A. 1981 Supp. 75-6104, provides:
'A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:
. . . .
'(d) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion be abused.' " 231 Kan. at 785.

The court also noted that the KTCA contains a further specific signing exception (now found at K.S.A. 1991 Supp. 75-6104[h]), which provides exemption from liability resulting from

" 'the malfunction, destruction or unauthorized removal of any traffic or road sign, signal or warning device unless it is not corrected by the governmental entity responsible within a reasonable time after actual or constructive notice of such malfunction, destruction or removal. Nothing herein shall give rise to liability arising from the act or omission of any governmental entity in placing or removing any of the above signs, signals or warning devices when such placement or removal is the result of a discretionary act of the governmental entity.' " 231 Kan. at 786.

In addition, K.S.A. 1991 Supp. 75-6104 provides: "The enumeration of exceptions to liability in this section shall not be construed

to be exclusive nor as legislative intent to waive immunity from liability in the performance or failure to perform any other act or function of a discretionary nature."

After noting the two above-mentioned statutes, the *Carpenter* court held:

"A fundamental rule of statutory construction, to which we adhere, is that the purpose and intent of the legislature governs when that intent can be ascertained from the statutes. *E.g., Brinkmeyer v. City of Wichita,* 223 Kan. 393, 396-97, 573 P.2d 1044 (1978). The most cursory reading of the provisions of the statute quoted above reveals the legislature has given special consideration to traffic signs. The signing exception, K.S.A. 1981 Supp. 75-6104(g), plainly and unambiguously bifurcates liability for traffic signs into the areas of maintenance and placement or removal of signs. . . .

"The case before us raises a question of liability for sign placement or, more precisely, failure to place a sign. The discretionary element in that decision is crucial to resolution of the issue. An exception written into a tort claims act constitutes a jurisdictional bar, if established." 231 Kan. at 786.

As previously noted, the trial court in *Carpenter* had determined that the placement of a sign is always discretionary with the governmental entity and that the exception from liability is applicable. In reversing the trial court, the Supreme Court held:

"Whether or not the placement of a warning sign on the particular curve in controversy herein was discretionary or mandatory depends upon the totality of the circumstances involved and may not be determined as a matter of law without regard thereto. We therefore conclude the trial court erred in sustaining the motion for summary judgment in favor of the governmental entities." 231 Kan. at 790.

The *Carpenter* decision is distinguishable from the present case. In *Carpenter,* the Supreme Court referred to specific language from the MUTCD and the Maintenance Manual on Signs and Markers for Highways in Kansas that indicates turn signs and curve signs are to be used whenever certain specified conditions were met. The court noted that the MUTCD and the Maintenance Manual on Signs and Markers for Highways in Kansas were adopted by the Department of Transportation to carry out the policy declared by the legislature and have the force and effect of laws. 231 Kan. at 789. In the present case, it is uncontroverted that the MUTCD contains no language that determines when a protected left-turn signal is to be placed at an intersection. There

is no determination to be made as to conditions under which signing is required.

The placement of a traffic-control device was found to be discretionary under the facts present in *Toumberlin v. Haas,* 236 Kan. 138, 689 P.2d 808 (1984). In that case, the plaintiffs were injured when two vehicles collided at the intersection of two low-volume county roads. The intersection was not controlled by any type of traffic-control device. 236 Kan. at 139.

The plaintiffs in *Toumberlin* presented no evidence that signs of any type were legally required under the MUTCD. The county engineer testified that both of the roads were low-volume roads, which, in his judgment, did not justify or require any type of traffic-control sign. At the close of evidence, the trial court ruled that the county's duty to place warning signs at the intersection was discretionary under the KTCA, and therefore the county was not liable to plaintiffs for damages. 236 Kan. at 140.

On appeal, the Supreme Court, citing *Carpenter,* rejected the plaintiff's claim that the state, counties, and townships labor under a common-law duty to maintain roadways under their control in a safe, reasonable manner. The court upheld the judgment of the trial court and summarized the applicable law as follows:

> "There can be no doubt that even with the repeal of the statutory liability for defects in the highways, a duty to maintain the highways remains under the general liability for negligence created by the KTCA. Although the scope of that duty is to be determined on a case-by-case basis and no hard and fast rule can be stated which would cover all possible future factual situations, *Carpenter* makes it clear that the Manual on Uniform Traffic Control Devices is to be used as a guide for state and local highway engineers in exercising their professional judgment as to any particular highway problem. However, whether a particular set of facts falls within any of the exceptions created by K.S.A. 1983 Supp. 75-6104 must be determined by considering 'the totality of the circumstances' in the particular case. *Carpenter v. Johnson,* 231 Kan. at 790. We find no error in the trial court's directed verdict in favor of Franklin County." 236 Kan. at 144.

In *Collins v. Board of Douglas County Comm'rs,* 249 Kan. 712, 822 P.2d 1042 (1991), the Supreme Court reaffirmed its position that the duty to place a sign is discretionary where no mandated duty or guideline exists. Collins dove from a low-water bridge into a shallow creek. He broke his neck, resulting in quadriplegia. Collins sued the county and township for their fail-

ure to place a "no diving" or "shallow depth" warning sign. The Supreme Court, referring to its analysis of the discretionary function exception and the signing exception in *Finkbiner v. Clay County*, 238 Kan. 856; *Toumberlin v. Haas*, 236 Kan. 138; and *Carpenter v. Johnson*, 231 Kan. 783, held:

"The relevant question under both exceptions is whether the placement of such a sign or indicator is a discretionary act.

"In *Robertson v. City of Topeka*, 231 Kan. 358, 644 P.2d 458 (1982), we concluded that it is the nature and quality of the discretion exercised which should be the focus rather than the status of the employee exercising the discretion. The test is whether the judgment of the governmental employees is of the nature and quality which the legislature intended to put beyond judicial review. 231 Kan. at 361-62.

"In *Dougan v. Rossville Drainage Dist.*, 243 Kan. 315, 757 P.2d 272 (1988), we reviewed Kansas and federal case law and concluded that the discretionary function exception is applicable only when no clearly defined mandatory duty or guideline exists. We have recently applied the exception in *Kansas State Bank & Tr. Co. v. Specialized Transportation Services, Inc.*, 249 Kan. 348, 818 P.2d 587 (1991)." 249 Kan. at 721.

Discretion in the erection of traffic-control devices exists but under certain specified conditions may be preempted by the MUTCD. If the conditions specified by the MUTCD as warranting the placement of a traffic-control device are satisfied, then the placement of the device is a matter of professional judgment; no discretion is involved. The MUTCD specifies minimum standards for safety. The MUTCD does not limit the authority of the government entity to achieve a higher level of safety by the erection of additional traffic-control devices, but the erection of such additional devices rests in the sound discretion of the responsible governmental authority.

Force's expert, John C. Glennon, D.E., testified in his deposition that he relied upon two manuals, the Traffic Control Devices Handbook by the United States Department of Transportation and the Manual on Traffic Signal Design by the Institute of Transportation Engineers, in concluding that a protected left-turn signal should have been in place at the intersection. Glennon testified that neither of those publications mandated left-turn phasing.

The Manual of Traffic Signal Design at page 28 prefaces its discussion of left-turn phasing with the following: "Although there

are no nationally established warrants for left-turn phasing mandated by the MUTCD, many states and local agencies have developed their own guidelines for utilizing left-turn phasing. Many of these 'local warrants' cite numerical values related to either volume, delay, or accidents, or a combination thereof."

The discretion of a state and a city to install, or not install, a traffic signal containing left-turn phasing has not been displaced or preempted by any mandatory requirements imposed by the Federal Highway Administration or KDOT. Any claim KDOT or the City may have abused their discretion by erecting, or not erecting, a signal containing left-turn phasing is thus barred by the discretionary function exception in the KTCA.

Finally, the City further claims that it had no duty, and in this instance no authority, to install a left-turn signal at the intersection. The City is subject to the direction and control of KDOT in the placement of traffic-control devices on 23rd Street. K.S.A. 8-2005(b) states: "Local authorities in exercising those functions referred to in subsection (a) shall be subject to the direction and control of the secretary of transportation with respect to highways and streets designated by the secretary as connecting links in the state highway system."

It is undisputed that 23rd Street is a connecting link in the state highway system. In the deposition testimony of James Tobaben, an assistant bureau chief for KDOT who oversees the maintenance of a uniform system of traffic-control devices across Kansas on the state highway system, KDOT has admitted that it has neither approved, nor would it approve, the installation of a protected left-turn signal at the intersection in question. Tobaben testified that, under the guidelines used by KDOT, a left-turn signal at the intersection was not justified prior to Force's accident, nor is it justified now. Tobaben's testimony leaves little doubt that KDOT would not have approved a left-turn signal had the City requested it.

It is apparent that the legislative intent of K.S.A. 8-2005(b) is to place the authority for signing of a connecting link highway with KDOT, not with the City and KDOT jointly. In *Collins,* the Supreme Court rejected the plaintiff's claim that placement of a warning sign was the joint responsibility of the county and

the township where the county is responsible, by statute, for the construction and maintenance of bridges. The court stated:

"If the language of K.S.A. 68-1104 is interpreted as suggested by Collins, the statute would be contradictory on its face, giving control of the culvert to both the County and the Township. Collins' interpretation is flawed because it does not harmonize with the plain language of the statute.

"Collins presented no support for his interpretation of the statute. The plain language of the statute controls. The district court was correct in (1) finding that Collins dove off a low-water bridge, and (2) ruling that the Township had no control over the bridge." 249 Kan. at 719-20.

The judgment of the trial court is affirmed.