NOT DESIGNATED FOR PUBLICATION

No. 127,715

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TROY ALAN MARTIN,
*Appellant*,

v.

CITY OF TOPEKA,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; JAY D. BEFORT, judge. Oral argument held August 5, 2025. Opinion filed September 12, 2025. Affirmed.

*Chloe Elizabeth Davis* and *Bruce Alan Brumley*, of Brumley Law Office, of Topeka, for appellant.

*Nicholas H. Jefferson*, chief of litigation, for appellee.

Before HILL, P.J., MALONE and HURST, JJ.

PER CURIAM: Every driver in America hates potholes. They ruin tires, bend tire rims, cause accidents, and—most of the time—they can't be avoided. As soon as the spring thaw comes, they appear after lurking under the ice and snow all winter. One day you are driving along fine and then the next day, on the same street, your car jolts into a pit that shakes your car and all within. This panel is unanimous in our opinion of potholes: they are abysmal.

1

But, in Kansas, making a successful claim against a city for damages resulting from a driver hitting a pothole is a different subject that requires compliance with the law. When we apply two legal principles to this case—the public duty doctrine and discretionary function immunity—it means any recovery is barred by law on this claim.

*Troy Alan Martin didn't make it to work one morning.*

On July 2, 2019, Martin was driving northbound at about 45 miles per hour in the 4800 block of SW Topeka Boulevard in Topeka. Martin hit a pothole, which caused his car to collide with the median and flip several times before coming to a rest. The pothole was about two feet long—large enough for Martin to fit both his feet inside. Martin was not wearing his seatbelt and was ejected from the vehicle as it rolled. As a result, he sustained personal injuries.

Martin filed a negligence action against the City of Topeka alleging the City's failure to maintain the roadway caused his accident. The record on appeal discloses several pertinent facts. The City does not routinely drive around looking for potholes, as it does not have the resources for such a program. The City receives notice of street defects—such as potholes—in several ways: from the public through a mobile computer application called "SeeClickFix"; through telephone calls; and from employees traveling throughout the City who happen to see potholes. Martin drove the 4800 block of SW Topeka Boulevard daily, including the day before this accident, and had not noticed the pothole before the accident and had not reported a pothole at that location.

*We must first address a technical issue concerning factual allegations in the City's motion for summary judgment.*

The district court held that the City's allegations of uncontroverted facts numbers 9 and 11 were admitted by Martin. To us, Martin denies any admission and contends that

the City has failed to meet Supreme Court Rule 141 (2025 Kan. S. Ct. R. at 216), which controls summary judgment motions. The City argues that the court did not abuse its discretion when it deemed the contentions admitted.

*The rules that guide us are well-established.*

Granting summary judgment is one way to bring an end to litigation without the labor and expense of a court or jury trial. But to receive summary judgment, a party must give the judge the facts of the case and show the controlling law so that a court is compelled to grant summary judgment. Supreme Court Rule 141 requires a party opposing a motion for summary judgment to state whether each of the movant's factual contentions are controverted or uncontroverted. If controverted, the party must "concisely summarize the conflicting testimony or evidence and any additional genuine issues of material fact that preclude summary judgment" and "provide precise references" where these material facts are found in the record. Supreme Court Rule 141(b)(1)(C) (2025 Kan. S. Ct. R. at 217).

A district court may deem the opposing party as having admitted facts under Rule 141 when that party frustrates the district court's ability to determine whether facts are controverted by failing to concisely summarize the conflicting evidence in the record. See *Lopez v. Davila*, 63 Kan. App. 2d 147, 153, 526 P.3d 674 (2023). We think this principle applies here.

*Statements 9 and 11*

In its statement of uncontroverted facts, the City alleged:

"9. The City had no notice of a pothole at the location of the accident prior to the incident."

3

Martin responded:

> "9.    **Controverted**. Plaintiff controverts both Defendant's characterization of the cited testimony and Defendant's assertion that Defendant had no notice of the pothole and/or the improperly maintained condition of the 4800 block of SW Topeka Boulevard.
>
> "The 4800 block of SW Topeka Boulevard has a well-established reputation among the citizens of the City of Topeka for its poor condition. This is demonstrated by the several complaints submitted to the Defendant regarding the condition of the same. *Plaintiff's Statement of Uncontroverted Facts*, ¶¶14-36. Further, Defendant contracted with a third party to assess the condition of Topeka's roadways. *Id.* at 12. This third party assessment found the 4800 block of SW Topeka Boulevard to be in poor condition. *Id.* at 13."

We must consider context here. In his statement of uncontroverted facts ¶¶ 14-36, Martin cited numerous pothole repair requests the City had received through its SeeClickFix application in July 2018 and from January 2019 through December 2019. In January 2019, potholes were identified at "4831 SW Topeka Blvd," "SE Topeka Blvd and 45th area," and "northbound Topeka Blvd right where the speed limit sign for 45 mph is." The City completed work on these repair requests in January 2019. In March 2019, potholes were identified at "4710-4892 SW Topeka Blvd." The City completed work on this repair request in March 2019.

Then, in April 2019, pavement damage was identified at "SW 49TH ST & SW TOPEKA BLVD." The City completed work at this location in April 2019. In April 2019, a service request identified asphalt at "the corner of 49th and Topeka Blvd, going south." The City completed work on that request in August 2019. In May 2019, potholes and road defects were identified at "North bound lanes immediately after turning onto Topeka Blvd from 45th . . . 4540 SW Topeka Blvd," "both the north and southbound lanes of SW. Topeka Blvd, between 45th and 49th St." The City completed work on these repair requests in June 2019.

4

Martin speaks of many repair requests and the reputation of some streets for potholes, but there is no language that controverts statement 9.

The City further alleged: "11. The decision as to how a City maintains, repairs, and replaces its roadways is based on several factors, including money available, cost/benefit analysis, and engineering and other professional judgment."

This time, Martin responded:

"11. **Controverted in part, uncontroverted in part**. Plaintiff does not controvert that in the event the City is aware of a defect, the specific approach to repairing said defect involve consideration of several facts. However, Plaintiff does dispute that the Defendant took any of the actions in relation to the 4800 block of SW Topeka Boulevard, in light of Defendant's own demonstrably untrue assertion that Defendant had no knowledge of the defect at issue. *Defendant's Motion for Summary Judgment*, ¶ 9."

A close reading of the two statements and their responses yields some clarity. Martin did not controvert the City's contention that it had no notice of the pothole at the location of Martin's accident. Both Martin's factual contentions and the City's fact statement #9 can be true at the same time. While the City had knowledge of the general poor condition of the roadway and repaired potholes in the vicinity before the accident, it had not received any notice of the specific pothole in question before Martin's accident.

Rather than concisely summarizing the conflicting evidence, Martin cited 25 paragraphs of his own statement of facts, which included pothole repair requests along Topeka Boulevard in both directions that the City received for a period of time from a year before Martin's accident to several months after Martin's accident. See Supreme Court Rule 141(b). This forced the district court to sift through numerous irrelevant road complaints, which thwarted the district court's purpose which was to determine whether

5

Martin controverted the City's specific statement of fact regarding the pothole involved in his accident.

In our view, Martin did not controvert the City's statements number 9 or 11 because the City did not assert that it took any action to address the pothole at issue. Martin did dispute that the City took any action, but the City never claimed it took any action because it was unaware of the pothole.

We find no abuse of discretion by the district court when it deemed numbers 9 and 11 admitted.

*Did the court err when it applied the public duty doctrine?*

In his response to the City's motion for summary judgment, Martin argued the public duty doctrine should not be applied here. The district court held the public duty doctrine controlled. The court reasoned that the City owes a duty to the public at large to keep its streets in reasonably safe condition but not to individuals. This is especially true because no special relationship existed between Martin and the City.

To us, Martin argues that we should remand the case because the district court ignored his argument that the public duty doctrine conflicts with the plain language and purpose of the Kansas Tort Claims Act. Martin argues that the Act controls and abrogates the public duty doctrine because it subjects governmental entities to liability under the circumstances where a private person would face liability. He extends his argument by saying that even if the public duty doctrine supersedes the Act, a special relationship existed because Martin was licensed to operate a motor vehicle on the City's roads.

For its part, the City argues that the public duty doctrine coexists with the Act and Kansas courts have routinely applied the public duty doctrine since the creation of the

6

Act. The City argues driving license requirements do not create a special relationship between the licensee and the City.

*We must review some well-established rules.*

We will rely on principles established by caselaw, by statute, and by common law. Summary judgment is rarely appropriate in negligence cases, unless the plaintiff fails to establish a prima facie case demonstrating the existence of the four elements of negligence: "existence of a duty, breach of that duty, an injury, and proximate cause." *Montgomery v. Saleh*, 311 Kan. 649, 653, 466 P.3d 902 (2020). If a court concludes that a defendant accused of negligence does not have a duty to act in a certain manner toward the plaintiff, a court may grant summary judgment because the existence of duty is a question of law subject to unlimited review by the appellate court. *Elstun v. Spangles, Inc.*, 289 Kan. 754, 757, 217 P.3d 450 (2009).

Under the Kansas Tort Claims Act, a governmental entity is generally liable for negligence "under circumstances where the governmental entity, if a private person, would be liable." K.S.A. 75-6103(a). This policy statement is molded by the limitations imposed by the statutes that follow it.

The public duty doctrine is a common-law principle of government immunity that bars a governmental entity's liability for negligence unless the plaintiff can show the entity owed a duty to the plaintiff individually rather than a duty to the public at large. *Williams v. C-U-Out Bail Bonds*, 310 Kan. 775, 788, 450 P.3d 330 (2019); *Henderson v. Board of Montgomery County Comm'rs*, 57 Kan. App. 2d 818, 825, 461 P.3d 64 (2020).

The public duty doctrine does not apply if the plaintiff can establish either a special relationship with the city or a specific duty owed by the city to the plaintiff individually. Special relationships include those between a parent and child; master and

7

servant; the possessor of land and licensees; persons in charge of one with dangerous propensities and third parties; and persons with custody of another and third parties. *Williams*, 310 Kan. at 788-89. Also a specific duty may be imposed by statute. See *Saleh*, 311 Kan. at 655.

Kansas continues to adhere to the public duty doctrine. Just a few years ago, in 2019, the *Williams* court stated, "the first hurdle that a plaintiff suing a governmental entity in negligence generally must overcome is establishing that the entity owed a duty to the plaintiff individually rather than a duty to the public at large." 310 Kan. at 788.

Indeed, to some extent, the Act codifies the public duty doctrine. K.S.A. 75-6104(n) states a governmental entity or its employees shall not be liable for damages resulting from "failure to provide, or the method of providing, police or fire protection." This court has stated that K.S.A. 75-6104(n) "codifies the common-law principle of government immunity known as the public duty doctrine." *Henderson*, 57 Kan. App. 2d at 824-25. Though this exception for police and fire protection does not apply here where the issue is street repairs.

Martin's argument that the public duty doctrine conflicts with the plain language of the Tort Claims Act—K.S.A. 75-6101 et seq.—is mildly persuasive, but no Kansas court has so held. And we will not so hold.

Martin claims that as a possessor of a driving license, he has a special relationship between himself and the City. This argument is creative yet unconvincing. Driving license requirements apply to the public at large and are controlled by the State—not the City. The State of Kansas issued his license, not the City of Topeka. There is no special relationship shown by these facts.

Martin has not shown the district court erred in applying the public duty doctrine. We agree with the district court, the public duty doctrine applies here.

*Was this pothole an open and obvious danger?*

In his response to the City's motion for summary judgment, Martin argued that the pothole was not an open and obvious danger and that, even if it were, an exception applied. The district court ruled the pothole should have been an open and obvious danger to Martin because Martin used South Topeka Boulevard daily. The court imputed knowledge of the danger to Martin. The court ruled that a reasonable person familiar with the road would have avoided the danger completely or altered their behavior by slowing down or wearing a seatbelt. Thus, the City owed Martin no duty.

To us, Martin argues whether he knew or should have known of the danger created by this pothole was a disputed issue of fact for the jury. He argues that even if the pothole was an open and obvious danger, an exception to the rule applied because he could not have avoided the pothole because there was a vehicle in the other lane. The City argues that if the pothole and the defective condition of the 4800 block of Topeka Boulevard were as Martin described, the danger would have been open and obvious to a daily driver like Martin.

*We must take into account several legal points.*

The existence of a duty is a question of law which this court reviews de novo. *Bonnette v. Triple D Auto Parts Inc.*, 55 Kan. App. 2d 130, 137, 409 P.3d 865 (2017). There is reason to expect that an invitee will fail to protect against the danger when the danger cannot be avoided. See *Crowe v. True's IGA*, 32 Kan. App. 2d 602, 608, 85 P.3d 1261 (2004).

9

Whether a danger is known and obvious is an objective test. Knowledge of the danger need not be actual knowledge. Knowledge may be imputed when a reasonable person in the situation would have recognized the danger. *Bonnette*, 55 Kan. App. 2d at 138; *Wellhausen v. University of Kansas*, 40 Kan. App. 2d 102, 106, 189 P.3d 1181 (2008).

The City has a duty to maintain the streets in a reasonably safe manner because public streets are necessary for public use at all times and under all conditions. *Schmeck v. City of Shawnee*, 232 Kan. 11, 17-19, 651 P.2d 585 (1982).

Martin met his burden to come forward with evidence that the danger could not be avoided. Martin testified that although he saw the pothole as he was approaching it, there was a vehicle in the other lane that prevented him from avoiding the pothole. That is a circumstance that should be anticipated by the City.

But, to the extent that Martin could have mitigated the danger by slowing down or wearing a seatbelt, those are questions more appropriately resolved by a jury on the issue of comparative fault. See *Langvardt v. Petitjean*, No. 124,700, 2022 WL 15549886, at *14 (Kan. App. 2022) (unpublished opinion).

The district court erred by determining the City owed no duty because the pothole was an open and obvious danger. This is a determination that should be made by a jury, not a judge deciding a motion for summary judgment.

*Did the district court err by finding the City had no reason to know about the pothole?*

In its motion for summary judgment, the City argued it did not have actual or constructive notice of the pothole and thus Martin could not show breach of a duty. The district court then ruled that the City could not have breached any duty it may have owed

Martin because the City had no actual knowledge of the pothole and had no reason to know of any defect at that location.

Whether a duty exists is a question of law, but whether the duty has been breached is a question of fact. *Wellhausen*, 40 Kan. App. 2d at 105. The breach element of a negligence action can rarely be decided on summary judgment. The reasonableness of the defendant's conduct is inherently a factual question. *Thomas v. Board of Shawnee County Comm'rs*, 293 Kan. 208, 230, 262 P.3d 336 (2011).

Whether the defendant knew or had reason to know of a danger is also a question of fact. See *Thomas*, 293 Kan. at 226-27.

The general rule is that a city is not liable for injuries arising from a defective condition unless the city has actual or constructive knowledge of the condition and reasonable time to repair the defect before the injury was sustained. *McCollister v. City of Wichita*, 180 Kan. 401, 403, 304 P.2d 543 (1956). A city may be liable for a street defect when it does not have actual knowledge of the defect if the defect is patent and has existed long enough such that the city should have known of it. *Smith v. Krebs*, 166 Kan. 586, 589, 203 P.2d 215 (1949).

Expert testimony is not necessarily required to establish negligence except in malpractice cases where breach of a standard of care must be proven. *Moore v. Associated Material & Supply Co.*, 263 Kan. 226, 235, 948 P.2d 652 (1997). Where the common knowledge and experience of jurors permit them to draw reasonable conclusions from given facts and circumstances, expert opinions are not needed. *Sterba v. Jay*, 249 Kan. 270, 283, 816 P.2d 379 (1991) (expert not required to testify whether warning signs were sufficient to warn a driver of a maintenance operation being carried out on the road).

The City does not routinely drive around its roadways looking for potholes, as it does not have the resources for such a program. The City receives notice of street defects, such as potholes, from the public through a mobile application called "SeeClickFix"; through telephone calls; and from employees traveling throughout the City who happen to see potholes. The City received numerous repair requests for the 4500 to 4800 blocks of SW Topeka Boulevard through its SeeClickFix application in July 2018 and from January 2019 through December 2019. Some of the repair requests noted that potholes had been repaired recently but then reappeared. Such is the nature of potholes. The City issued corresponding work orders and completed work on these requests.

In 2018, the City earmarked $5.5 million to improve South Topeka Boulevard from 37th to 49th Street. In 2019, the City contracted with a third party to conduct an independent assessment of the condition of Topeka's streets. The 4800 block of SW Topeka Boulevard was assessed at "poor," which was defined as "Pavement has low-, medium- and high-severity distresses. Near-term maintenance and repair needs may range from rehabilitation up to reconstruction."

Martin drove through the 4800 block of SW Topeka Boulevard daily—including the day before the accident—and had not noticed the pothole before the accident and had not reported a pothole at that location.

The district court did not consider and decide whether expert testimony was required to establish a standard of care. It merely ruled the City had no actual knowledge of the pothole and had no reason to know of any defect at that location. That is the issue for this appeal.

Martin did not present evidence that the City had actual knowledge of the pothole that caused his accident. Martin also did not present evidence that the pothole had been allowed to remain in a dangerous condition for such a length of time to conclude the City

12

should have known it was there. Martin had not seen the pothole when traveling on the road the day before.

We agree with Martin on this point. Martin presented evidence that the City knew about the poor condition of the stretch of roadway where the accident occurred. Potholes were repaired but then reappeared. Whether the City should have known about this pothole was a disputed question of fact for the jury.

*Did the district court err in determining the City was immune from liability under the discretionary function exception to the Kansas Tort Claims Act?*

In Martin's response to the motion for summary judgment, Martin argued the discretionary function exception to the Act was inapplicable. The district court ruled that the City was entitled to discretionary function immunity because Martin's theory of liability ostensibly was that the City should have known about the pothole, but the frequency and methods of inspection or otherwise acquiring notice of street defects are in the City's discretion.

Under the Kansas Tort Claims Act, liability is the rule and immunity is the exception. *Patterson*, 307 Kan. at 630. It is the City's burden to establish an exception applies. See 307 Kan. at 630.

The discretionary function exception to the Tort Claims Act states that a governmental entity is not liable for damages resulting from "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved." K.S.A. 75-6104(e).

13

A city's general duty to keep its streets in a reasonably safe condition is mandatory; a city has no discretion to avoid the duty. *Draskowich v. City of Kansas City*, 242 Kan. 734, 739-40, 750 P.2d 411 (1988). At common law, a city's duty to keep its streets in a reasonably safe condition was an exception to the immunity cities traditionally enjoyed while engaged in governmental functions. A city is liable in a civil action for failure to perform this duty because streets must be safe for the traveling public. *Schmeck*, 232 Kan. at 17-21.

When there is a clearly defined mandatory duty or guideline, the discretionary function exception to the Act is inapplicable. A mandatory duty or guideline can arise from agency directives, caselaw, or statutes. *Soto v. City of Bonner Springs*, 291 Kan. 73, 80, 238 P.3d 278 (2010).

The existence of a general duty of care is distinct from a mandatory duty or guideline that eliminates the possibility of immunity under the discretionary function exception. After a general duty of care is established, the parties remain free to argue whether the defendant was permitted to exercise discretion in how to fulfill the general duty. *Thomas*, 293 Kan. at 236. A mandatory guideline "leaves little to no room for individual decision making, exercise of judgment, or use of skill." *Henderson*, 57 Kan. App. 2d at 831.

The scope of the general duty to maintain city streets in a reasonably safe condition is determined on a case-by-case basis. A particular action to carry out said duty may be mandatory or discretionary depending on all the circumstances. See *Toumberlin v. Haas*, 236 Kan. 138, 142-44, 689 P.2d 808 (1984) (finding total lack of evidence to support plaintiff's contention that placement of a sign at an intersection was mandatory); *Force v. City of Lawrence*, 17 Kan. App. 2d 90, 100, 838 P.2d 896 (1992).

14

A city's decision concerning *how* to maintain its streets is discretionary in the absence of a statutory or other requirement directing the city to act in a particular manner. See *Grey v. City of Topeka*, No. 125,338, 2024 WL 657220, at *6 (Kan. App.) (unpublished opinion), *rev. denied* 319 Kan. 833 (2024).

But there are statutorily created duties. For example, a Kansas statute requires mail routes to be inspected "after the occurrence of every storm, and as soon as possible after complaint is made." The City must "within a reasonable time repair the same, and remove from the highway all obstructions that may have been caused by the elements, and do everything reasonable to keep such mail routes clear and free for the distribution of the mail." K.S.A. 68-551. A city has no discretion to avoid this duty.

The City does not routinely drive around its roadways looking for potholes, as it does not have the resources for such a program. The City receives notice of street defects, such as potholes, from the public through a mobile application called "SeeClickFix"; through telephone calls; and from employees traveling throughout the City who happen to see potholes. In 2019, the City received numerous repair requests for the 4500 to 4800 blocks of SW Topeka Boulevard through its SeeClickFix application. The City issued corresponding work orders and completed work on these requests. In 2019, an independent assessment of the 4800 block of SW Topeka Boulevard assessed its condition as "poor."

The decision on how a city maintains, repairs, and replaces its roadways is based on several factors, including money available; cost/benefit analysis; and engineering and other professional judgment. In 2018, the City earmarked $5.5 million to improve South Topeka Boulevard from 37th to 49th Street.

Martin's contention that the City failed to maintain the 4800 block of SW Topeka Boulevard (as opposed to incorrectly repairing or maintaining the same) is contradicted

15

by his own statement of facts. Martin cites numerous completed work orders where the City did make repairs to SW Topeka Boulevard.

If the City knew that the pothole was making the road unsafe, the City's negligence would be a question of fact for the jury. But Martin's contention that the City should have known about the pothole implies that the City failed to perform a duty to properly inspect the block. But how often a city is to inspect its streets is discretionary.

A fallen electric line case provides an example of this type of discretion. In reaching its conclusion that the frequency and methods of inspection were discretionary decisions, the district court cited *BNSF Railway Co. v. City of Augusta*, No. 17-2602-JTM, 2018 WL 5617814 (D. Kan. 2018) (unpublished opinion).

In *BNSF*, an electrical line belonging to Augusta fell across the railroad's tracks and damaged BNSF's equipment. BNSF sued the city alleging the line fell because of a faulty clamp which Augusta failed to properly inspect and maintain. *BNSF Railway Co.,* 2018 WL 5617814, at *1. The court held the inspection regime adopted by Augusta was a policy decision entitled to discretionary immunity. 2018 WL 5617814, at *7.

The only breach of duty alleged by BNSF was inadequate inspection of a clamp. To prevent accidents like had occurred, inspections would have to occur at least daily. *BNSF Railway Co.,* 2018 WL 5617814, at *6. The National Electrical Safety Code left decisions regarding the frequency and methods of inspections to Augusta's discretion. Augusta's inspection practices were consistent with most small electrical utilities in the country. 2018 WL 5617814, at *3. There was no defined mandatory guideline governing the frequency or method of inspections. Rather, the frequency and method of such inspections was a policy decision that required weighing the dangers involved with the resources available. 2018 WL 5617814, at *6.

16

Here, the City says it does not routinely inspect its roadways for potholes because it does not have the resources to do so. The City does not point to any authority stating that such inspections are discretionary or that its practice is consistent with other cities in the country. On the other hand, Martin does not point to any authority establishing mandatory guidelines for the inspection of City streets for potholes or other defects. The statute Martin cites—K.S.A. 68-551—does not apply because there was no evidence of a recent storm before Martin's accident.

Because the material facts are undisputed, whether the discretionary function exception applies here is a question of law. *Patterson*, 307 Kan. at 630. In the absence of a mandatory duty or guideline governing street inspections, the decision how to allocate the City's limited resources for street inspections is a policy decision that requires weighing the danger to the traveling public with the resources available. Thus, on the record here, the City was entitled to immunity under the discretionary function exception.

*Summary*

Even with the Tort Claims Act, it is technically rigorous to successfully sue a city in Kansas. Even though cities can now be held liable in some areas for their negligence— unlike the old days of sovereign immunity—there are some areas where they are not liable. The common-law principles of duty, breach of duty, and loss due to that breach are still the basis for negligence claims. All of those requirements must exist and be proved in order to recover on such negligence claims against the City. Here, however, application of the public duty doctrine from common law and discretionary function immunity from the Kansas Tort Claims Act bars Martin's recovery. We affirm the district court's grant of summary judgment to Topeka.

Affirmed.