No. 54,023

DANIEL CARPENTER, *Appellant,* v. DAMON V. JOHNSON; SHAWNEE COUNTY, KANSAS; JEFFERSON COUNTY, KANSAS; and STATE OF KANSAS, *Appellees.*

(649 P.2d 400)

Opinion filed July 22, 1982.

*Jerry R. Palmer,* of Topeka, argued the cause and was on the brief for the appellant.

*Russell K. Ash,* staff attorney, Kansas Department of Transportation, of Topeka, argued the cause and was on the brief for the appellee, State of Kansas.

*Thomas E. Wright,* of Goodell, Stratton, Edmonds, Palmer & Wright, of Topeka, argued the cause and was on the brief for the appellee, Shawnee County, Kansas.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal by Daniel Carpenter (plaintiff/appellant) from summary judgment entered against him and in favor of the Board of Commissioners of Shawnee County, Kansas, and the State of Kansas (defendants/appellees). The district court found the governmental entities immune from suit under provisions of the Kansas Tort Claims Act (KTCA). K.S.A. 1981 Supp. 75-6101 *et seq.*

The facts are brief and undisputed. In the early morning hours of August 12, 1979, Daniel Carpenter was a passenger in an automobile being driven by Damon Johnson. The vehicle was proceeding in an easterly direction on Northeast 46th Street when, about one-tenth of a mile west of the intersection of Northeast 46th Street and Highway K-4, the vehicle left a curve and struck an embankment. It is undisputed that, at the time of the accident, the curve was not marked with any warning signs.

Carpenter, the passenger, sustained injuries and brought suit against Damon Johnson, the State of Kansas, Jefferson County, and Shawnee County. He later moved to dismiss his actions against Damon Johnson and Jefferson County. The court ordered dismissal of the actions against these defendants with prejudice. The cause of action against the State and Shawnee County alleged that these governmental entities failed to properly maintain the roadway or, in the alternative, failed to correct a defect in the roadway by failure to erect a warning sign in accordance with the Manual on Uniform Traffic Control Devices. The State and Shawnee County filed separate motions for summary judgment. The court sustained those motions, finding K.S.A. 1981 Supp. 75-6104(g) of the Kansas Tort Claims Act prohibits this action against the governmental entities. The plaintiff duly perfected his appeal to the Court of Appeals. The case was transferred to the Supreme Court on motion of the appellant. K.S.A. 20-3017.

A single issue is presented on appeal: whether the trial court erred in finding the governmental entities immune from suit pursuant to K.S.A. 1981 Supp. 75-6104(g), an exception to liability pertaining to warning signs.

The Kansas Tort Claims Act, K.S.A. 1981 Supp. 75-6101 *et seq.*, a so-called "open ended" tort claims act, makes liability the rule and immunity the exception. K.S.A. 1981 Supp. 75-6103(a) states the general rule:

"*Subject to the limitations of this act*, each governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state." (Emphasis added.)

See generally Note, *Governmental Liability: The Kansas Tort Claims Act [or The King Can Do Wrong],* 19 Washburn L. J. 260 (1980).

Although liability is the rule, as emphasized above, it is not a rule without limitations. Exceptions from liability enumerated in K.S.A. 1981 Supp. 75-6104 indicate the legislature has not rejected the concept of immunity. *Robertson v. City of Topeka,* 231 Kan. 358, 360, 644 P.2d 458 (1982). The manner in which the Kansas Tort Claims Act changed prior law remains to be analyzed as specific factual situations come before this court.

Carpenter, the plaintiff-appellant in this action, argues the general law in Kansas before the Tort Claims Act recognized the right of a person to sue the government for damages sustained resulting from the negligent failure to post warning of a curve or turn. K.S.A. 1978 Supp. 68-419 (repealed L. 1979, ch. 186, § 33) imposed liability on the State for defects in a state highway. K.S.A. 68-301 (repealed L. 1979, ch. 186, § 33) imposed liability for defects on county and township roads. See *e.g., Hampton v. State Highway Commission,* 209 Kan. 565, 498 P.2d 236 (1972); *Carder v. Grandview Township,* 2 Kan. App. 2d 7, 573 P.2d 1121, *rev. denied* 225 Kan. 843 (1978); Annot., 55 A.L.R.2d 1000. Municipalities had a common law liability for street defects. *Grantham v. City of Topeka,* 196 Kan. 393, 411 P.2d 634 (1966). Three specific circumstances convince us this prior law concerning highway defects should not be engrafted onto the Tort Claims Act. First, the legislature specifically repealed the highway defect statutes. Second, under the prior law, the alleged defect was the sole focus of the inquiry regardless of any discretion which might have been exercised. *Hampton v. State Highway Commission,* 209 Kan. at 577-78. Third, under the prior law, no essential distinction existed between defects resulting from maintenance or failure to place signs. Compare *Grantham v. City of Topeka,* 196 Kan. 393, with *Carder v. Grandview Township,* 2 Kan. App. 2d 7. As discussed more fully herein, the Tort Claims Act distinguishes between sign maintenance and sign placement, with the exercise of discretion a significant inquiry with regard to liability for sign placement.

It is important, for purposes of background, to note the Kansas Tort Claims Act contains a discretionary function exception patterned after the discretionary function exception in the Federal Tort Claims Act. 28 U.S.C. § 2680(*a*). The Kansas exception, at K.S.A. 1981 Supp. 75-6104, provides:

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . . .

"(*d*) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion be abused."

The KTCA contains a further specific signing exception patterned after the Oklahoma Political Subdivision Tort Claims Act, Okla. Stat. Ann. tit. 51, § 151 *et seq.* (West 1981 Supp.), specifi-

cally at § 155(15). The Federal Tort Claims Act contains no parallel provision. K.S.A. 1981 Supp. 75-6104(g) provides exemption from liability resulting from:

"[T]he malfunction, destruction or unauthorized removal of any traffic or road sign, signal or warning device unless it is not corrected by the governmental entity responsible within a reasonable time after actual or constructive notice of such malfunction, destruction or removal. Nothing herein shall give rise to liability arising from the act or omission of any governmental entity in placing or removing any of the above signs, signals or warning devices when such placement or removal is the result of a discretionary act of the governmental entity."

In addition, K.S.A. 1981 Supp. 75-6104 contains a catch-all provision which provides:

"The enumeration of exceptions to liability in this section shall not be construed to be exclusive nor as legislative intent to waive immunity from liability in the performance or failure to perform any other act or function of a discretionary nature."

A fundamental rule of statutory construction, to which we adhere, is that the purpose and intent of the legislature governs when that intent can be ascertained from the statutes. *E.g., Brinkmeyer v. City of Wichita,* 223 Kan. 393, 396-97, 573 P.2d 1044 (1978). The most cursory reading of the provisions of the statute quoted above reveals the legislature has given special consideration to traffic signs. The signing exception, K.S.A. 1981 Supp. 75-6104(g), plainly and unambiguously bifurcates liability for traffic signs into the areas of maintenance and placement or removal of signs. This distinction has been recognized in other jurisdictions. See, *e.g., Crucil v. Carson City,* 95 Nev. 583, 600 P.2d 216 (1979); *Gallison v. City of Portland,* 37 Or. App. 145, 586 P.2d 393 (1978), *rev. denied* 285 Or. 319 (1979); *Bd. of Comm'rs. v. Briggs,* 167 Ind. App. 96, 337 N.E.2d 852 (1975). We express no opinion as to the holdings in these cases.

The case before us raises a question of liability for sign placement or, more precisely, failure to place a sign. The discretionary element in that decision is crucial to resolution of the issue. An exception written into a tort claims act constitutes a jurisdictional bar, if established. See, *e.g. Baird v. United States,* 653 F.2d 437, 440 (10th Cir. 1981), *cert. denied* 454 U.S. 1144 (1982); *In re Air Crash Disaster Near Silver Plume, Colo.,* 445 F. Supp. 384, 400 (D. Kan. 1977). See also *Wheat v. Finney,* 230 Kan. 217, 221, 630 P.2d 1160 (1981).

To determine whether or not the failure to place these signs is

within the exercise of discretion which is excepted from liability, we first must examine the duty of the governmental entities. K.S.A. 8-2003 requires the secretary of transportation to adopt a manual and specifications for a uniform system of traffic-control devices within the state.

"The secretary of transportation shall adopt a manual and specifications for a uniform system of traffic-control devices consistent with the provisions of this act for use upon highways within this state. Such uniform system shall correlate with and so far as possible conform to the system set forth in the most recent edition of the manual on uniform traffic-control devices for streets and highways and other standards issued or endorsed by the federal highway administrator."

Pursuant to this statute, the secretary adopted the Manual on Uniform Traffic Control Devices for Streets and Highways published by the United States Department of Transportation. The 1971 edition was in effect at the time of this 1979 accident.

K.S.A. 8-2004 requires the secretary to place such signs as he shall deem necessary *in accordance with the manual and specifications.*

"(a) The secretary of transportation shall place and maintain such traffic-control devices, conforming to the manual and specifications adopted under K.S.A. 8-2003, upon all state highways as the secretary shall deem necessary to indicate and to carry out the provisions of this act or to regulate, warn or guide traffic."

### K.S.A. 8-2005 addresses the obligation of local authorities:

"(a) Local authorities in their respective jurisdictions shall place and maintain such traffic-control devices upon highways under their jurisdiction as they may deem necessary to indicate and to carry out the provisions of this act or local traffic ordinances or to regulate, warn or guide traffic. All such traffic-control devices hereafter erected shall conform to the state manual and specifications."

The district court concluded that discretion remains with the local authorities whether or not to erect the warning signs urged to be necessary in this case. According to the district court's reasoning, conformity with the state-approved manual and specifications becomes important only after the decision to erect a sign is made. The district court reviewed provisions of the Manual on Uniform Traffic Control Devices to substantiate its conclusion that placement of warning signs is left to the discretion of the governing authority. See sections 1A-3 (Engineering Study Required), 1A-4 (Meanings of "Shall," "Should" and "May"), 2C-1 (Application of Warning Signs), 2C-4 (Turn Sign), and 2C-9 (Large Arrow Sign). We quote section 1A-3 of the manual:

"The decision to use a particular device at a particular location should be made on the basis of an engineering study of the location. Thus, while this Manual provides standards for design and application of traffic control devices, the Manual is not a substitute for engineering judgment. It is the intent that the provisions of this Manual be standards for traffic control devices installation, but *not a legal requirement for installation.*" (Emphasis supplied.)

It would not be profitable to quote extensively from the Manual, but two further provisions serve to illustrate our point of divergence from the reasoning of the district court. Section 2A-1 provides:

"Signs should be used only where warranted by facts and field studies. Signs are *essential* where special regulations apply at specific places or at specific times only, or *where hazards are not self-evident.*" (Emphasis added.)

Section 2C-5 provides:

"The Curve sign . . . is intended for use where engineering investigations of roadway, geometric, and operating conditions show the recommended speed on the curve to be in the range between 30 and 60 miles per hour and equal to or less than the speed limit established by law or by regulation for that section of highway. Additional protection may be provided by use of the Advisory Speed plate."

It is apparent from our reading of the Manual on Uniform Traffic Control Devices that state and local highway engineers are guided by rather detailed recommendations in placement of warning signs. The question becomes whether those employees are exercising discretion within the meaning of the KTCA or merely exercising professional judgment within established guidelines. Cases construing the Federal Tort Claims Act have made such a distinction. See, *e.g., Barton v. United States,* 609 F.2d 977 (10th Cir. 1979); *Jackson v. Kelly,* 557 F.2d 735 (10th Cir. 1977); *Downs v. United States,* 522 F.2d 990 (6th Cir. 1975); *In re Air Crash Disaster Near Silver Plume, Colo.,* 445 F. Supp. 384.

Our court was confronted with the nature of the discretionary function in the KTCA in *Robertson v. City of Topeka,* 231 Kan. 358. There the court concluded it is the nature and quality of the discretion exercised which should be our focus of attention rather than the status of the employee exercising that discretion. That reasoning is equally applicable to the signing exception. K.S.A. 1981 Supp. 75-6104(*g*). The test is whether the judgments of the government employee are of the nature and quality which the legislature intended to put beyond judicial review. For the guid-

ance of the bench and bar the court in *Robertson,* citing *Downs v. United States,* 522 F.2d at 997, said as follows:

"In *Downs,* the survivors of victims who died in an airplane hijacking alleged an FBI agent's negligence in handling the situation caused the deaths. The government argued the actions of the agent fell within the discretionary function exception. The court noted that '[j]udgment is exercised in almost every human endeavor' (522 F.2d at 995), so that factor alone cannot be determinative of immunity. The court determined the intent of the federal act to be protection at the policy formulation level. 522 F.2d at 996. Since handbook procedures had been developed for use in responding to a hijacking, the agent's actions were not within the discretionary function exception." 231 Kan. at 361.

We believe professional judgment rather than governmental discretion is at issue in the case at bar. Our conclusion is buttressed by reference to the Maintenance Manual on Signs and Markers for Highways in Kansas, a manual prepared by the State Highway Commission of Kansas from the Manual on Uniform Traffic Control Devices. Arlen Tappan, the Highway Marking Engineer for the Kansas Department of Transportation, testified in his deposition:

"Q. As far as determining what signs are located at what locations on State highway systems, is that your responsibility?

"A. Yes, basically, uh-huh.

"Q. Is that delegated to any other employees under your jurisdiction or under your supervision?

"A. I have four people working under me in my section and we use the manual as the, you know, law for what sign is determined to be used where and then we administer that to our districts."

The power to adopt rules and regulations is administrative in nature, not legislative, and to be valid must be within the authority conferred by the legislature. Rules and regulations adopted by an administrative board, here the Department of Transportation, to carry out the policy declared by the legislature in the statute, have the force and effect of laws. *Goertzen v. State Department of Social & Rehabilitation Services,* 218 Kan. 313, 543 P.2d 996 (1975); *State, ex rel., v. Columbia Pictures Corporation,* 197 Kan. 448, 417 P.2d 255 (1966). The 1962 edition of the Maintenance Manual on Signs and Markers for Highways in Kansas which was in effect at the time the road in question was built provides specifically at page 29:

[ILLUSTRATED SIGN]
"W1-1
30" x 30"
"The Turn sign showing an arrow bent at a right angle . . . shall be used to mark curves on which a ball-blank indicator shows banks of 10 degrees or more at a speed of 30 miles per hour. Where a Turn sign is warranted, a Large Arrow sign shall be used on the outside of the turn. Additional protection shall be provided by use of the Advisory Speed plate. Curve Sign (W1-2)

[ILLUSTRATED SIGN]
"W1-2
30" x 30"
"The Curve sign, showing a curved arrow . . . shall be used to mark a curve where a test with a ball-blank indicator gives readings of 10 degrees or more at speeds between 21 and 66 miles per hour.

"Additional protection shall be provided by the use of the Advisory Speed plate."

These particular provisions in Kansas serve to distinguish an Oklahoma Tort Claims case relied upon by both governmental defendants. *Ochoa v. Taylor,* 635 P.2d 604 (Okla. 1981). The court in *Ochoa* relied also on prior Oklahoma case law holding installation and maintenance of traffic signs to be discretionary governmental functions. 635 P.2d at 608. The Kansas court has never so held.

In conclusion, the trial court held that K.S.A. 1981 Supp. 75-6104(g), the signing exception of the Kansas Tort Claims Act, constituted an absolute bar, as a matter of law, to any action against a governmental entity for failure to cause the initial placement of any traffic signal, road sign or warning device. In so doing, the trial court reasoned that such determination was a wholly discretionary function expressly excepted from the Kansas Tort Claims Act. We do not agree.

Whether or not the placement of a warning sign on the particular curve in controversy herein was discretionary or mandatory depends upon the totality of the circumstances involved and may not be determined as a matter of law without regard thereto. We therefore conclude the trial court erred in sustaining the motion for summary judgment in favor of the governmental entities.

We express no opinion as to the merits of the case, nor as to the proper parties to the action. Because of its determination that the KTCA prohibits the action, the district court did not reach the issue of whether or not the State was a proper party.

The judgment of the lower court is reversed and remanded for further proceedings consistent with this opinion.