**Samantha Jean KASTENDIECK, et al., Plaintiffs,**

v.

**The BOARD OF COUNTY COMMISSIONERS OF MORRIS COUNTY, KANSAS, Defendant.**

**Civil Action No. 93–1246.**

United States District Court, D. Kansas.

Aug. 13, 1996.

Craig J. Altenhofen, Harper, Hornbaker, Altenhofen & Opat, Junction City, KS, David P. Calvert, Focht, Hughey & Calvert, L.L.C., Wichita, KS, for Samantha Jean Kastendieck, Eugene Anthony Kastendieck, Eugene William Kastendieck, Sr. and Diane Kastendieck.

Charles E. Millsap, Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, KS, Mark F. Anderson, KS Disciplinary Administrator's Office, Topeka, KS, for Morris County Board of County Commissioners.

### MEMORANDUM AND ORDER

THEIS, District Judge.

This is a negligence action brought against Morris County, Kansas, under the Kansas Tort Claims Act, K.S.A. § 75–6101, *et seq.* The plaintiffs are the heirs of Gene and Lisa Kastendieck, who were killed in an automobile accident which occurred on July 5, 1991, on Skiddy Road in Morris County. The plaintiffs allege that accident was caused, in part, by the County's failure to place adequate delineators along the curve where the accident took place and the County's negligent failure to replace the curve sign which plaintiffs contend was down at the time of the accident, as well as its negligent initial placement of the curve sign.

This matter is before the court on defendant's motion for summary judgment. (Doc. 44). Defendant argues that its decision regarding placement of delineators was a discretionary function, for which it is entitled to immunity under the Kansas Tort Claims Act. Defendant also argues that the plaintiffs have no evidence from which a jury could find the County breached its duty of care regarding replacement of the curve sign. Finally, defendant argues that any negligence on its part was not a proximate cause of this accident.

## 1. Facts

Gene and Lisa Kastendieck died as a result of injuries sustained in an automobile accident on July 5, 1991. The decedents were passengers in the back seat of a pickup truck driven by Homer Smith. Kevin Dickerson, Lisa Kastendieck's brother, was a passenger in the front seat of the automobile. The pickup truck left the road at a fifty-miles-per-hour left curve on Skiddy Road in rural Morris County.

On July 5, 1991, Homer and Dianne Smith, Dickerson and the Kastendiecks had been drinking beer. How much beer they drank and whether they also consumed liquor are matters in dispute, but it is undisputed that they consumed at least a case of beer between them. It is uncontroverted that Homer Smith passed out sometime during the day and slept for approximately two hours. It was approximately one hour after waking up that Homer Smith decided to drive the others (except Dianne Smith, who had left sometime earlier) to Junction City, Kansas.

On July 5, 1991, Homer Smith was familiar with the stretch of Skiddy Road where the accident occurred. He had driven it every day on his way to and from work. That evening, Smith drove approximately six miles before leaving the road at the subject curve. As he approached the curve, Smith looked to the rear of the truck to talk to the Kastendiecks. There is some dispute about how long Smith's head was turned and how much time elapsed between when he turned his head and when the truck left the road. The truck left the road at approximately 10:30 p.m.[1]

After the accident, Homer Smith was taken to the Irwin Army Community Hospital. At 3:45 a.m. on July 6, 1991, a blood sample was taken from Smith for the purpose of testing for alcohol. Smith's blood alcohol level was determined to be .0936 percent at that time. Defendant's expert calculates from that figure that Smith's blood alcohol level was .156 percent at the time of the accident.

Smith was convicted of one count of aggravated vehicular homicide in connection with the accident. The plaintiffs in this lawsuit filed an action against Homer Smith, which resulted in a settlement.

The plaintiffs contend the County was negligent in failing to have a left curve sign properly in place south of the curve and in failing to place a sufficient number of delineators around the curve. A left curve sign was placed south of the curve sometime before 1979. It is unclear when or how the sign was removed. The curve sign does not appear in the photograph taken by a Morris County sheriff's officer the day following the accident.

The same photograph reveals three delineators along the curve. The parties dispute the purpose of these delineators. The plaintiffs contend that they were placed to mark the curve and that, therefore, more delineators were necessary, and they should have been closer together. The defendant contends that at least two of the delineators were placed to mark road hazards other than the curve.

## 2. Standard for Summary Judgment

▆ The court is familiar with the standards governing the consideration of a motion for summary judgment. The Federal Rules of Civil Procedure provide that summary judgment is appropriate when the documentary evidence filed with the motion "show[s] that there is no genuine issue as to any material fact and that the moving party

[1]. The only reference to the time of the accident appears in the argument section of plaintiffs' response brief, but the defendant has raised no dispute about the issue.

is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

 The burden at the summary judgment stage is similar to the burden of proof at trial. The court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact on its claim(s). Rule 56, however, imposes no requirement on the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323, 106 S.Ct. at 2552 (emphasis in original). Once the moving party has properly supported its motion for summary judgment, the nonmoving party may not rest upon mere allegations or denials, but must set forth specific facts showing a genuine issue for trial, relying upon the types of evidentiary materials contemplated by Rule 56. Fed.R.Civ.P. 56(e). Each party must demonstrate to the court the existence of contested facts on each claim it will have to prove at trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden the party will face at trial on the particular claim. *Anderson,* 477 U.S. at 254, 106 S.Ct. at 2513.

## 3. The Kansas Tort Claims Act

Under the Kansas Tort Claims Act, K.S.A. § 75–6101 *et seq.,* a governmental entity generally is liable to the same extent as a private person "for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment...." K.S.A. § 75–6103(a). The act contains several exceptions to the general rule of liability. K.S.A. § 75–6104.

Two exceptions to liability are relevant to this case. Defendant argues that it is immune from liability for its decisions regarding the curve delineators under the discretionary function exception, found at K.S.A. § 75–6104(e). Defendant next argues that K.S.A. § 75–6104(h), dealing with repair and replacement of road signs, provides it with immunity from liability for damages resulting from failure to replace the curve sign before the accident. Again, defendant also argues that its decisions and actions were not a proximate cause of the accident.

### a. curve delineators

 K.S.A. § 75–6104(e) provides immunity for

> any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless or the level of discretion involved.

Whether a function is discretionary depends on the totality of the circumstances. *Carpenter v. Johnson,* 231 Kan. 783, 789, 649 P.2d 400 (1982). The test is whether the judgments of the government employee(s) are of the nature and quality which the legislature intended to put beyond review. *Id.* at 788, 649 P.2d 400. The discretionary function exception does not apply where a legal duty exists which the governmental entity is required to follow. *Dougan v. Rossville Drainage Dist.,* 243 Kan. 315, 322, 757 P.2d 272 (1988). The exception applies only when no mandatory guidelines exist to govern the defendant's conduct. *Id.* at 323, 757 P.2d 272. A distinction is made between an exercise of discretion and an exercise of professional judgment within established guidelines, with a governmental entity entitled to immunity only for the former. *Carpenter,* 231 Kan. at 788, 649 P.2d 400. The court

considers the nature and quality of the discretion exercised rather than the status of the employee. *Robertson v. City of Topeka,* 231 Kan. 358, 362, 644 P.2d 458 (1982).

■ Once discretion has been exercised in favor of performing a given function, the government does not have immunity for a ministerial act performed or a decision based on professional judgment made in carrying out that function. *Huseby v. Board of County Comm'rs of Cowley County,* 754 F.Supp. 844, 848 (D.Kan.1990); *Allen v. Kansas Dep't of Social & Rehab. Serv's,* 240 Kan. 620, 623, 731 P.2d 314 (1987).

■ With regard to a governmental entity's duty to place and maintain traffic control devices, the Kansas Secretary of Transportation adopted the Manual on Uniform Traffic Control Devices ("MUTCD") pursuant to K.S.A. § 8–2003. *Carpenter,* 231 Kan. at 787, 649 P.2d 400. The MUTCD provides specifications for uniform system of traffic control devices throughout the state. *Id.* Accordingly, under the MUTCD, some decisions regarding traffic control devices are mandated, some are discretionary, and others are a matter of professional judgment rather than discretion. *See Id.* at 790, 649 P.2d 400. Again, the court must consider the totality of the circumstances in determining whether a particular decision is a matter of discretion. *Id.*

Plaintiffs contend that the County was negligent in its placement of delineators to mark the subject curve. Delineators are defined in the MUTCD as "light-retroreflecting devices mounted at the side of the roadway, in series, to indicate the roadway alignment." MUTCD § 3D–1. The County argues that its decisions regarding placement of delineators along the curve were discretionary and thus cannot subject it to liability. The court agrees that the initial decision whether to use delineators is discretionary. The language in the MUTCD on this point is permissive: "Delineators may be used...." MUTCD § 3D–1. No other language in the chapter on delineation indicates that delineators are mandatory or that the decision to use them would be one of professional judgment rather than discretion.

The plaintiffs counter that the County did, in fact, decide to place delineators along the curve and was thus required to do so in accordance with the Manual of Uniform Traffic Control Devices. There were three delineators along the curve just prior to the accident, one of which was knocked over when the pickup truck went off the road. The County contends that one of the delineators was there to mark a farm access road, a second marked a bridge culvert, and the County claims there is no available explanation for the third delineator. It is the opinion of plaintiffs' expert witness that all three delineators appear to have been placed to mark the curve. Fred Worrell, Morris County's road supervisor, initially testified in his deposition that the third delineator was placed to mark the curve, but in corrections to the deposition, he denied knowledge as to why the third delineator was put in place.

■ If the County decided to mark the curve with delineators, it was required to do so in compliance with any relevant mandates in the MUTCD. On this point, the MUTCD guides governmental entities as to the placement of delineators. "Delineation is intended to be a guide to the vehicle operator as to the alignment of the highway; whatever is needed to provide that guidance in a clear and simple way should be installed." MUTCD § 3D–4. As to marking curve alignment in particular the MUTCD states: "Spacing should be adjusted on approaches and throughout horizontal curves so that several delineators are always visible to the driver." § 3D–5. A table suggests that on a curve with a 900 foot radius, delineators be placed every eighty-five feet. Table III–1.

The court concludes that eighty-five foot spacing suggestion is insufficient on its own to create a mandatory duty. Furthermore, the plaintiffs' contention that the county decided to mark the curve with a series of delineators is based only on speculation presented in the form of expert witness testimony. Although the court is troubled by the decisions in *Allen* and *Huseby,* the court concludes that under the totality of the circumstances, the county's decisions regarding placement of the delineators was discretionary.

Furthermore, the court concludes that there is no evidence from which a reasonable jury could find the county's actions, even if non-discretionary and negligent, were the proximate cause of this accident. Considering the evidence in the light most favorable to the plaintiffs, the driver of the vehicle was intoxicated and looking behind him at the time the vehicle left the road; he was also familiar with the stretch of road where the accident occurred. The court is guided in this decision by the Kansas Supreme Court's decision in *Baker v. City of Garden City*, 240 Kan. 554, 731 P.2d 278 (1987), a case involving a truck which ran a red light, hitting plaintiff's vehicle and causing serious injuries to the plaintiff. Although there was evidence that the temporary traffic signal was improperly installed, that it was difficult to see and that it had a very short yellow sequence, the court held that there was insufficient evidence to establish that these defects were the proximate cause of the accident. *Id.* at 555–60, 731 P.2d 278. In this case, the plaintiffs' evidence with respect to proximate cause is even weaker than that in *Baker*.

The plaintiffs can only speculate that more delineators could have prevented this accident. Such speculation is insufficient to overcome a motion for summary judgment.

**b. left curve sign**

The plaintiffs next contend that the County was negligent in failing to replace the left curve sign after it was somehow taken down. The Kansas Tort Claims Act includes a specific exception to liability for sign replacement. A government entity is not liable for damages resulting from:

> The malfunction, destruction or unauthorized removal of any traffic or road sign, signal or warning device unless it is not corrected by the governmental entity responsible within a reasonable time after actual or constructive notice of such malfunction, destruction or removal. Nothing herein shall give rise to liability arising from the act or omission of any governmental entity in placing or removing any of the above signs, signals or warning devices when such placement or removal is the

result of a discretionary act of the governmental entity.

K.S.A. § 75–6104(h).

In this case, plaintiffs do not argue that the County had actual notice the sign was down before the accident. Nor do they have any evidence to show when the sign came down so as to prove constructive notice. There is a photograph of the accident scene taken the day after the accident in which the sign does not appear. Plaintiffs contend that a reasonable inference to be drawn from that photograph is that the sign was down at the time of the accident. The court disagrees. The plaintiffs merely speculate that the sign was down at the time of the accident, and speculate further that it was down a sufficient length of time that the County should have discovered it, through a formal inspection procedure or otherwise, in time to replace it before the accident.

Plaintiffs next contend that constructive notice can be established by the County's failure to establish an adequate sign inspection procedure. Plaintiffs correctly state that Morris County does not have a formal sign inspection procedure. Rather, sheriff's officers are instructed to watch for missing or damaged traffic control signs as they drive around the county and to report the same to the dispatcher. The dispatcher contacts the road department, who repairs or replaces the signs as soon as it can. Plaintiffs argue that this procedure is inadequate and that "[c]ounties in Kansas are required to adequately inspect traffic control devices on a periodic basis."

The initial question before the court, then, is whether the County is under a duty to have a formal procedure for periodic sign inspection. Without determining what constitutes a proper inspection program or deciding whether the Morris County procedure is adequate, the court concludes that the County was under a duty to inspect its road signs. *Huseby*, 754 F.Supp. at 847. The duty is enunciated in the MUTCD, which requires that all traffic signs be properly maintained and recommends a suitable schedule for inspection, cleaning and replacement of signs. *Id.* The type and frequency

**394**

of inspection is a matter of professional judgment rather than discretion. *See Id.* Thus the County can be liable if its inspection of road signs falls below the standard of due care.

■ Of course, the County can be liable only if its negligence is the proximate cause of the claimed damages. *See Baker,* 240 Kan. 554, 731 P.2d 278. In this case, plaintiffs are required to show that if the County had established and followed a proper procedure for inspecting its road signs, it would have discovered the curve sign at issue down and replaced it before the time of the accident. This would require some showing that the sign was down long enough that it would have been discovered upon inspection. Again, the plaintiffs have presented no such evidence. The court rejects the plaintiffs' argument that the lack of a formal inspection program substitutes for proof of proximate cause or constructive notice under K.S.A. § 75–6104(h). To accept plaintiffs' position would shift the burden of proof to the defendant to show that the sign had not been down an unreasonable length of time.

■ Normally, proximate cause is a jury question. *Id.* at 557, 731 P.2d 278. However, where the evidence is susceptible only to one inference, the question is one of law. *Id.* The plaintiffs have not presented a genuine issue of material fact that the County had constructive notice that the sign was down before the accident or that the lack of a formal inspection procedure prevented the downed sign from being discovered. Accordingly, the County is entitled to summary judgment as to the claim of negligent failure to replace the curve sign.

■ Finally, the plaintiffs contend that the County's original placement of the left curve sign was negligent because it was placed too close to the curve itself. Fred Worrell testified that when he replaced the sign, he put it 750 feet from the start of the curve, in compliance with the MUTCD, whereas the previous sign had been closer to the curve.[2] The County can be liable for failing to comply with the MUTCD in its placement of the curve sign if such improper placement was a causal factor in the accident.

Again, the court can only speculate as to whether the left curve sign had been displaced before the accident. If, as plaintiffs have contended, the curve sign was down at the time of the accident, then its original improper placement could not have contributed causally to the accident. If the sign was in place at the time of the accident, then the plaintiffs still can only speculate that its position contributed to cause the accident. The undisputed evidence is that Homer Smith was familiar with this road and this curve. However, at the time of the accident, he was intoxicated and looking away from the road. There is no evidence from which a reasonable juror could find that placement of the curve sign contributed to this accident.[3]

**IT IS BY THIS COURT THEREFORE ORDERED** that the defendant's motion for summary judgment (Doc. 44) is hereby granted.

---

2. The parties do not address the admissibility of this evidence under Federal Rule of Evidence 407.

3. There is no evidence even as to how far the original sign had been from the curve.