NOT DESIGNATED FOR PUBLICATION

No. 125,338

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JULIE KATHLEEN GREY,
*Appellant*,

v.

CITY OF TOPEKA, et al.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; TERESA L. WATSON, judge. Submitted without oral argument. Opinion filed February 16, 2024. Affirmed.

*Eric Kjorlie*, of Topeka, for appellant.

*Nicholas H. Jefferson*, senior litigation attorney, of City of Topeka, for appellee City of Topeka.

Before WARNER, P.J., GARDNER and HURST, JJ.

HURST, J.:  After growing impatient waiting for a ride from a friend, Julie Kathleen Grey began walking north on the pedestrian sidewalk across the Kansas Avenue Bridge. While walking, Grey saw her friend driving across the bridge on the opposite side. Apparently not wanting to wait for her friend to drive to her, Grey climbed over the concrete barrier between the sidewalk and the traffic lanes, crossed the two southbound two lanes of traffic, and then climbed over the concrete barricades blocking the center of the bridge from the traffic lanes. Unfortunately, Grey did not realize the center concrete barricades blocked access to a large gap in the bridge and she fell to the ground below suffering serious injuries.  Grey brought a suit against the City of Topeka and various

1

other parties alleging they were liable for her injuries. The district court granted the City summary judgment, finding it was immune from liability under the Kansas Tort Claims Act. Finding no error in the district court's well-reasoned opinion, this court affirms.

FACTUAL AND PROCEDURAL BACKGROUND

Before its redesign in 1996, the Kansas Avenue Bridge in Topeka, Kansas, (the Bridge), had a pedestrian sidewalk down the center. The 1996 redesign removed the center sidewalk and added a handicap accessible sidewalk on the west side of the Bridge. This redesign resulted in an approximate 4-foot-wide gap in the middle of the Bridge about 30 feet above the ground. The City of Topeka (the City) placed concrete barricades measuring 2 feet, 8 inches in height on either side of the gap. The City also erected "two regulatory signs" at each end of the Bridge's center barricades which stated, "NO FOOT TRAFFIC ACCESS."

At about 6 p.m. on June 30, 2014, Julie Kathleen Grey was walking north on the sidewalk across the Bridge. At the same time, Grey's friend was driving a vehicle on the other side of the Bridge and called out to Grey. Rather than walk to the end of the Bridge to meet up with her friend, Grey climbed over the concrete barricade that separated the sidewalk from the lanes of traffic, crossed two traffic lanes to get to the center of the Bridge, and then climbed over the 2-foot, 8-inch concrete barricade blocking entrance to the center of the Bridge. Apparently not realizing the concrete barrier guarded a large gap in the Bridge, Grey fell through the gap and landed on the ground approximately 30 feet below. The parties agreed there were no crosswalks or other signs directing pedestrian traffic to the center of the Bridge, and there was no opening in the barricade allowing access to the center of the Bridge near where Grey fell.

In June 2016, Grey filed a petition in Shawnee County District Court against the City and various other parties that the district court dismissed asserting her recovery was

2

barred by the statute of repose. Grey appealed that dismissal, and a panel of this court affirmed the district court's holding that the statute of repose barred Grey's claims alleging negligent installation of the Bridge. *Grey v. City of Topeka*, No. 117,652, 2018 WL 1352506, at \*7 (Kan. App. 2018) (unpublished opinion). However, it remanded Grey's claim that the City breached its continuing duty to warn her of allegedly unsafe conditions on the Bridge, explaining:

> "[T]he City had a duty to maintain its streets in a reasonably safe condition, a duty to provide a proper warning of the dangerous condition of the bridge, and a duty to properly supervise construction of the bridge."

> ". . . As to Grey's claim based on a failure to warn or a failure to maintain, the last day the City could have breached its duty was the day Grey was injured. Thus, Grey's claim against the City for failure to warn or failure to maintain, assuming that such a claim can be established, is not barred by the statute of repose." 2018 WL 1352506, at \* 2, 7.

The district court had dismissed Grey's claims prior to discovery, so the district court and appellate court did not analyze the substance of Grey's claims based on a duty to warn. Therefore, the panel remanded Grey's failure to warn and maintain claim for further proceedings to address that issue. 2018 WL 1352506, at \*7.

In October 2021, the City moved for summary judgment alleging: (1) The City had no duty to warn of open and obvious dangers; (2) if required, the City's warnings and safety precautions were reasonable; (3) the City was immune from liability under the KTCA for any failure to warn; (4) Grey was more than 50% at fault for her injuries; and (5) there were no cognizable claims against the named individuals in their individual capacities.

Grey's response to the City's motion for summary judgment failed to address most of the City's defenses. Additionally, without appropriate legal or factual support, Grey

3

argued that (1) the public duty doctrine did not bar her claim against the City; (2) the available discovery did not absolve the City of its nondelegable duty to warn, and such warning was nondiscretionary as a matter of law under "the applicable Section(s) of the Restatement (Second) of Torts (1964)"; (3) the KTCA provides a remedy for the City's "failure to provide proper signage" for the "latent dangerous condition" of the gap; and (4) the KTCA provides a remedy for City's "duty to maintain, operate, or inspect their property."

The City replied, arguing that Grey failed to respond to its motion for summary judgment. In April 2022, the district court granted the City's motion for summary judgment and found the City was required to, and did comply with, the Manual on Uniform Traffic Control Devices (MUTCD) when it placed the "NO FOOT TRAFFIC ACCESS" signs on the Bridge. The district court found the City immune from liability under the KTCA because its decision on whether and how to place a sign was a discretionary act. K.S.A. 75-6104(e) and (h). To the extent Grey's failure to warn claim rested on the design defects not already barred by the statute of repose, the district court found the City was also immune from liability under the KTCA. K.S.A. 75-6104(m). Lastly, the district court found that Grey failed to assert facts supporting a claim against the individually named City employees because there was no evidence that the employees acted outside the scope of their employment or had control over the Bridge premises.

Grey appealed.

DISCUSSION

On appeal, Grey distills her arguments down and essentially only challenges the district court's finding that the City was immune from liability under the KTCA for all of Grey's claims. Grey does not challenge the district court's finding that she failed to maintain a claim against the individually named defendants. Grey alleges that (1) the

4

district court incorrectly interpreted precedent in finding the City immune from liability under the KTCA, and (2) the KTCA did not provide the City with immunity for its nondelegable duty to warn Grey about the gap in the Bridge.

As a preliminary matter, the City claims that Grey's failure to address the City's legal arguments supporting summary judgment requires this court to dismiss her appeal for failure to preserve her claims. Generally, an appellant may not raise new legal arguments on appeal that were not presented to the district court. Supreme Court Rule 6.02(a)(5) (2023 Kan. S. Ct. R. at 36). However, "[R]ule 6.02 does not require an appellant to be the party who raised an issue below in order to claim error on appeal." *Russell v. Treanor Investments, L.L.C.*, 311 Kan. 675, 682, 466 P.3d 481 (2020) (finding appellant did not raise legal issue for the first time on appeal because the district court initiated the question sua sponte). Contrary to the City's contention, Grey's failure to respond to the City's motion for summary judgment does not mean she concedes the *legal* issues presented. "'[T]he only effect of a non-movant's failure to respond to a motion for summary judgment is that it constitutes an admission by the non-movant that there are no disputed issues of genuine fact warranting a trial; it does not constitute a waiver by the non-moving party of all legal arguments based upon those undisputed facts.'" *Lumry v. State*, 305 Kan. 545, 566, 385 P.3d 479 (2016) (quoting *Flynn v. Sandahl*, 58 F.3d 283, 288 [7th Cir. 1995]).

Although Grey failed to previously attack the City's reliance on *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 413 P.3d 432 (2018), this court may address Grey's claim on appeal that the district court misapplied this precedent. The City relied on *Patterson* in its motion for summary judgment. The district court had an opportunity to address *Patterson*'s applicability—and did in fact rely on it—in granting the City's motion for summary judgment. Grey's arguments on appeal attacking the district court's reliance on *Patterson* is preserved for this court's review.

As a separate preservation issue, the City contends that Grey improperly raises new legal arguments for the first time on appeal. This is different from Grey's failure to address the City's legal arguments during the summary judgment briefing. Specifically, Grey's response to the City's motion for summary judgment included an argument that Restatement (Second) of Torts § 337 (1965) imposes a duty on the City to warn, even if Grey trespassed, because the City knew of the danger and seriousness of potential injury. However, on appeal Grey adds legal arguments under additional sections of the Restatement (Second) of Torts, namely sections 336 and 350, essentially arguing that the City had a nondelegable and nondiscretionary duty to warn that was somehow not subject to the City's immunity claim under the KTCA. These theories of liability were not previously addressed by Grey, the City, or the district court.

While in limited circumstances this court may consider newly raised arguments for the first time on appeal, Grey provides no reason why this court should extrapolate her Restatement (Second) of Torts § 337 arguments to include those in sections 336 and 350 added on appeal. See *Cole v. Mayans*, 276 Kan. 866, 873, 80 P.3d 384 (2003) (explaining exceptions to the general rule prohibiting newly raised arguments on appeal). This court will address only Grey's claims under section 337 of the Restatement (Second) of Torts. See *Lindsey v. Miami County Nat. Bank*, 267 Kan. 685, 690, 984 P.2d 719 (1999) (declining to address appellant's legal argument raised for the first time on appeal).

Grey's preserved claims are addressed in turn.

I. THE CITY IS IMMUNE FROM LIABILITY UNDER THE KTCA FOR GREY'S CLAIMS

The district court granted the City's motion for summary judgment, finding the City immune from civil liability for Grey's claims. "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and

6

supporting affidavits show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law." *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019). This court reviews the district court's decision to grant the City summary judgment de novo to determine whether, based on the undisputed facts, a legal question remains. Where "reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment is inappropriate." 310 Kan. at 982.

The City is a "governmental entity" generally subject to liability for negligence claims arising under the KTCA:

> "(a) Subject to the limitations of this act, each governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state." K.S.A. 75-6103(a).

See also K.S.A. 75-6101 (outlining applicability of KTCA); K.S.A. 75-6102(a), (b), and (c) (defining governmental entities in the KTCA).

Under the KTCA, the general rule holds governmental entities liable for their acts or omissions, and immunity is an exception to that general rule. The City carries the burden to establish that one or more of these exceptions to liability applies. *Patterson*, 307 Kan. at 630.

*Discretionary Immunity under K.S.A. 75-6104(e) and (h)*

Under the KTCA, governmental entities are immune from liability for their discretionary—rather than mandatory or required—functions and duties. K.S.A. 75-

7

6104(e), (h). The KTCA provisions applicable to the events surrounding Grey's injuries provide:

> "A governmental entity or an employee acting within the scope of the employee's employment *shall not be liable for damages resulting from*:
>
> . . . .
>
> "(e) any claim based upon the exercise or performance or the failure to exercise or perform *a discretionary function or duty* on the part of a governmental entity or employee, whether or not the discretion is abused and *regardless of the level of discretion involved*;
>
> . . . .
>
> "(h) the malfunction, destruction or unauthorized removal of any traffic or road sign, signal or warning device unless it is not corrected by the governmental entity responsible within a reasonable time after actual or constructive notice of such malfunction, destruction or removal. Nothing herein shall give rise to liability arising from the act or omission of any governmental entity *in placing or removing any of the above signs, signals or warning devices when such placement or removal is the result of a discretionary act of the governmental entity*." (Emphases added.) K.S.A. 75-6104(e) and (h).

Thus, the City is immune from liability under the KTCA for Grey's claims if the City had discretion over whether or how to erect a sign on the Bridge alerting people to the large gap in the middle. This court will therefore determine whether the City was required or had discretion over whether to erect such sign.

The City is required to "adopt a manual and specifications for a uniform system of traffic-control devices" and the uniform system "shall correlate with and . . . conform to the system set forth in the most recent edition of the manual on uniform traffic-control devices . . . ." K.S.A. 8-2003. The City is further required to "place and maintain such traffic-control devices" to carry out provisions of its statutory requirements "or to regulate, warn or guide traffic" in conformity with "the state manual and specifications."

8

K.S.A. 8-2005(a); see *Patterson*, 307 Kan. at 633 ("All traffic-control devices placed and maintained by local authorities must conform to the MUTCD."). So, the City must either adopt the MUTCD or some other manual that conforms to the MUTCD as its system for traffic-control devices, such as traffic warning signs. The City claims—and Grey does not dispute—that it adopted the MUTCD as its uniform system for traffic-control devices as required by statute.

After identifying the MUTCD as the City's uniform system of traffic-control devices, this court must determine whether the MUTCD requires signage in circumstances such as the gap on the Bridge or if the City had discretion over whether and how to erect such signage. Grey's claim hinges on the City's failure to place an appropriate sign to warn pedestrians of the large gap on the Bridge, and thus whether the City's decision to place such a sign was discretionary or required under the MUTCD is crucial to determining the City's liability. See *Patterson*, 307 Kan. at 633; *Carpenter v. Johnson*, 231 Kan. 783, 786, 649 P.2d 400 (1982).

The City contends that the MUTCD did not require signage for the gap in the Bridge. The City's Engineer testified that the MUTCD did not provide guidance for design or placement of signage for a gap in a four-lane bridge like the one at issue. The engineer explained, "This would be a special situation," and when the MUTCD does not provide guidance, the traffic engineer would decide whether any sign was needed and, if yes, would "have to use their engineering judgment to decide on the language."

Grey did not dispute the City's reliance on the MUTCD or challenge the City engineer's testimony. Those facts are thus uncontroverted. See Rule 6.02(a); see also *Collins v. Douglas County*, 249 Kan. 712, 717, 822 P.2d 1042 (1991) (The party opposing summary judgment "cannot rely solely upon the pleadings and allegations" and "must come forward in opposition with something of evidentiary value."). When the material facts are uncontroverted, "whether an exception of the KTCA applies to grant

immunity to a governmental entity is a question of law" over which this court exercises unlimited review. *Patterson*, 307 Kan. at 630.

The KTCA does not define the phrase "discretionary function or duty," so this court looks primarily to the nature and quality of discretion exercised to determine whether a function or duty is discretionary. "The mere application of any judgment is not the hallmark of the exception." *Soto v. City of Bonner Springs*, 291 Kan. 73, 79, 238 P.3d 278 (2010). Rather, "'[t]he more a judgment involves the making of policy[,] the more it is of a "nature and quality" to be recognized as inappropriate for judicial review.'" *Thomas v. Board of Shawnee County Comm'rs*, 293 Kan. 208, 234, 262 P.3d 336 (2011) (quoting *Kansas State Bank & Trust Co. v. Specialized Transp. Services, Inc.*, 249 Kan. 348, 365, 819 P.2d 587 [1991]). But the discretionary function exception is inapplicable when there is a "clearly defined mandatory duty or guideline" arising from agency directives, caselaw, or statutes. *Thomas*, 293 Kan. at 235.

In *Patterson*, two people in a vehicle drowned when the road on which they were driving ended at a river. Signs were posted toward the end of the road that stated, "Pavement Ends," but there were no signs warning that the road itself ended at a river. Suits brought on behalf of the decedents' estates alleged the County, among others, violated the KTCA because they negligently failed to provide adequate warning signs, barriers, or other indicators that the road ended at the river. On appeal from summary judgment based on the discretionary immunity exception to the KTCA, the *Patterson* court found the "language from the 1978 edition of the MUTCD requiring signs where hazards were not self-evident was deleted from the manual in 2000 and not replaced with any comparable requirement to adhere to any particular directive in placing traffic warning signs." 307 Kan. at 632. Because the MUTCD in that case lacked the previous level of mandate or detailed guidance for deciding when a sign was necessary, "the County had the discretion not to consider whether to install [the disputed] signs" and "the

10

KTCA shields the County from liability on all of Patterson's claims. The County was entitled to summary judgment." 307 Kan. at 638.

Like the plaintiff in *Patterson*, Grey failed to advance facts that the MUTCD provided criteria directing or guiding the City in placing any type or quality of warning sign on the Bridge about the large gap. See *Patterson*, 307 Kan. at 634-35. The MUTCD in place at the time of Grey's fall is applicable here. See *Finkbiner v. Clay County.*, 238 Kan. 856, 860, 714 P.2d 1380 (1986) (applying the MUTCD version in effect at the time of the accident). Because Grey failed to identify any provision of the MUTCD requiring the City to act under these circumstances, the lack of such a requirement "is the hallmark of a discretionary function when the negligence alleged is not erecting a particular traffic-control device." *Patterson*, 307 Kan. at 632, 635. Under the MUTCD:

> "[S]tate and local highway engineers are guided by rather detailed recommendations in placement of warning signs. The question becomes whether those employees are exercising discretion within the meaning of the KTCA or merely exercising professional judgment within established guidelines." *Carpenter*, 231 Kan. at 788.

Stated another way, if there is no statutory or other requirement directing the City to act regarding roadway signage, then the City's decision about whether or how to erect such signage is more likely to be discretionary.

Grey mistakenly argues that the court in *Patterson* and *Carpenter* concluded that the MUTCD required governmental entities to erect a sign when the hazard was not self-evident. Rather, the court in both of those cases concluded that governmental entities are required to erect signs as provided by the applicable version of the MUTCD. See *Patterson*, 307 Kan. at 634-35; *Carpenter*, 231 Kan. at 788. In *Carpenter*, 231 Kan. at 788, the applicable provision of the MUTCD required the governmental entity to erect signs "where hazards [were] not self-evident," but the applicable MUTCD version in

11

*Patterson* did not contain that requirement. 307 Kan. at 634. In *Carpenter* the court found the MUTCD required the government entity to erect signs for latent hazards, and therefore summary judgment was inappropriate because factual questions remained as to whether erecting a sign under the circumstances was discretionary or an exercise of professional judgment. 231 Kan. at 788-89. The undisputed evidence here is that the applicable MUTCD did not require the City to erect a sign on the Bridge under these circumstances. Therefore, whether and how to erect such a sign was a discretionary act— not an exercise of professional judgment—and thus the City is immune from liability under the KTCA. The district court properly concluded that the City was immune from liability under K.S.A. 75-6104(e) and (h).

*Plan/Design Immunity under K.S.A. 75-6104(m)*

The district court also found the City immune from liability under the design function immunity provision of K.S.A. 75-6104(m). Under that provision:

> "A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:
>
> . . . .
>
> "(m) the plan or design for the construction of or any improvement to public property, either in its original construction or any improvement thereto, if the plan or design is *approved in advance of the construction or improvement* by the governing body of the governmental entity or some other body or employee *exercising discretionary authority to give such approval and if the plan or design was prepared in conformity with the generally recognized and prevailing standards in existence at the time such plan or design was prepared*." (Emphases added.) K.S.A. 75-6104(m).

On appeal, Grey failed to challenge the district court's reliance on K.S.A. 75-6104(m) in granting the City summary judgment. When the appellant failed to address all the alternative grounds for a district court's judgment, the issues not addressed by

12

appellant and not relied on by the appellate court are rendered academic and unassailable. *Greenwood v. Blackjack Cattle Co.*, 204 Kan. 625, 627, 464 P.2d 281 (1970) (when district court's decision is based on alternative grounds, appellant's failure to challenge both grounds on appeal "renders unnecessary" a decision on the issue that is raised). It is thus unnecessary for this court to address this theory of immunity.

Nonetheless, and in the interest of completeness, the City asserted—and Grey failed to refute—that the City followed the MUTCD in the design of the Bridge and that "[t]he 1996 design of the bridge, including the design of any and all signage, was in conformance with the design standards and practices at the time of its design." The City also asserted and provided supporting documentation that the 1996 redesign plans were submitted to and approved by the city engineer and city clerk before construction. Grey did not directly respond to the City's immunity argument under K.S.A. 75-6104(m), but she argued that the barriers protecting pedestrians from exiting the sidewalk and stepping into the gap were too low to conform to OSHA safety standards. Not only does OSHA "not create a private cause of action," it is inapplicable here as it applies to employment relationships and there are no allegations that Grey was injured during the course of her employment. See *Douglass v. United Auto Workers, Local 31*, 368 F. Supp. 2d 1234, 1248 (D. Kan. 2005) ("Indeed, OSHA standards may not be introduced as evidence for any reason relating to civil liability."); see also 29 U.S.C. § 653(a) ("This chapter shall apply with respect to employment performed in a workplace in a State . . . .").

Thus, the uncontroverted facts are that the City's designs conformed with the MUTCD design standards and practices at the time and that the designs were submitted and approved before construction or improvement. The district court correctly found the City immune from liability pursuant to K.S.A. 75-6104(m).

## II. GREY FAILED TO ASSERT ANY THEORY OF LIABILITY UNDER WHICH THE CITY WAS NOT IMMUNE FROM LIABILITY

Although difficult to decipher, Grey's final argument on appeal appears to recite the basis for her common-law negligence claim against the City. Grey claims that the City had a duty to maintain its streets and sidewalks and a nondelegable and continuous duty to warn of dangerous conditions known to, or likely to, cause serious injury or death as described in the Restatement (Second) of Torts §§ 336, 337, and 350. Those sections of the Restatement provide:

"§ 336 Activities Dangerous to Known Trespassers

"A possessor of land who knows or has reason to know of the presence of another who is trespassing on the land is subject to liability for physical harm thereafter caused to the trespasser by the possessor's failure to carry on his activities upon the land with reasonable care for the trespasser's safety."

"§ 337 Artificial Conditions Highly Dangerous to Known Trespassers

"A possessor of land who maintains on the land an artificial condition which involves a risk of death or serious bodily harm to persons coming in contact with it, is subject to liability for bodily harm caused to trespassers by his failure to exercise reasonable care to warn them of the condition if

"(a) the possessor knows or has reason to know of their presence in dangerous proximity to the condition, and

"(b) the condition is of such a nature that he has reason to believe that the trespasser will not discover it or realize the risk involved."

"§ 350 Dangerous Conditions Created in Highway by Possessor or for His Benefit
"A possessor of land over which there is a public highway is subject to liability for physical harm caused to travelers thereon by a failure to exercise reasonable care in creating or maintaining in reasonably safe condition any structure or other artificial condition created or maintained in the highway by him or for his sole benefit subsequent to its dedication."

14

As explained above, Grey failed to preserve her arguments under sections 336 and 350 of the Restatement (Second) of Torts, and this court will only address her arguments under section 337.

Grey argues that the City knew the gap in the Bridge posed a danger of serious injury or death because in 2001 two teenagers fell through the gap and one died. After those unfortunate deaths, Grey contends that the City then provided a regulatory—rather than a warning—sign regarding the gap. The two regulatory signs were posted at either end of the Bridge at the center barricade that state, "NO FOOT TRAFFIC ACCESS." Grey asserts that the City had a "continuous" and "nondelegable/nondiscretionary" duty to warn because the KTCA is not "subservient" to the MUTCD regarding signage, that the MUTCD required a warning sign in this instance and not a regulatory sign, and that the City could have provided a better warning sign to pedestrians.

Grey attempts to frame a claim for damages in a manner to avoid KTCA immunity but ignores that the discretionary immunity under the KTCA applies "whether or not the discretion is abused." See K.S.A. 75-6104(e). Thus, "discretionary immunity can apply even if a duty of care is breached." *BNSF Railway Co. v. City of Augusta, Kansas*, No. 17-2602-JTM, 2018 WL 5617814, at *4 (D. Kan. 2018) (unpublished opinion). Even when couched as a failure to warn—rather than a failure to erect signage—the court must still determine the "legal question of whether a given duty was sufficiently discretionary that immunity exists under the KTCA." See 2018 WL 5617814, at *4. As explained above, the City's duty to install roadway signage is controlled by the MUTCD. Grey provides no legal authority demonstrating that the discretionary authority immunity under the KTCA is inapplicable to the City—even under a duty to warn theory—under these circumstances. When the MUTCD does not provide any guidance on signage under a particular circumstance, the governmental entity has discretion to determine whether and how to post signage, "whether or not the discretion is abused." K.S.A. 75-6104(e). Even

15

if the City had a duty to warn, because that duty was discretionary under the MUTCD, the City is immune from liability under the KTCA.

CONCLUSION

Grey entered the center of the Bridge, after traversing over barriers intended to prevent pedestrian access to vehicle lanes and another barricade preventing access to the center of the Bridge where she fell through a large gap. Grey claims the City failed to properly warn of the large gap in the Bridge and is thus liable for her serious injuries that resulted from the fall. However, Grey fails to provide legal authority showing the City was required to erect signage warning of the gap.  Because it is undisputed that the MUTCD provides the City with wide discretion in deciding whether and how to warn of the large gap in the Bridge, the KTCA provides the City with immunity from liability associated with that decision. The district court's well-reasoned, thoughtful opinion is affirmed.

Affirmed.